## HELVERING, COMMISSIONER OF INTERNAL REVENUE, v. OREGON MUTUAL LIFE INSURANCE CO.

No. 564.   Argued November 19, 1940.—Decided December 9, 1940.

*Mr. Arnold Raum,* with whom *Solicitor General Biddle, Assistant Attorney General Clark,* and *Messrs. Sewall Key* and *Edward H. Horton* were on the brief, for petitioner.

*Mr. William Marshall Bullitt* for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

In computing its net taxable income for 1933 and 1934, respondent took a deduction of 3¾% of the reserves it had set aside with respect to its combined policies of life, health, and accident insurance.   Section 203 (a) (2)

of the 1932 and 1934 Revenue Acts permits a life insurance company to deduct from its gross income "An amount equal to [3¾%] of the mean of the reserve funds required by law . . ."[1] That respondent was a life insurance company as defined by the Revenue Acts and that it was required by law to maintain reserves to protect both death and disability benefits were conceded. The Commissioner allowed a deduction for death reserves, but disallowed as to disability reserves, on the hypothesis that the words "reserve funds required by law" should be construed to apply only to reserves for death losses—thereby excluding disability reserves. The Board of Tax Appeals held the deductions allowable in both respects and reversed the Commissioner.[2] The Court of Appeals for the Ninth Circuit affirmed;[3] certiorari was granted because the Court of Claims had reached an opposite result on the same question.[4]

Legislative history discloses that a deduction similar to that allowed by § 203 (a) (2) first appeared in the Revenue Act of 1921,[5] and has reappeared in every revenue measure since, including that of 1939.[6] Prior to 1921, insurance companies had not been allowed such a deduction, but had been subject to the same tax plan as corporations generally; the 1921 Act, however, wholly exempted insurance companies from the general scheme

---

[1] 47 Stat. 224; 48 Stat. 732.

[2] The opinion is not officially reported; the Board relied on its earlier decisions in Equitable Life Assurance Society v. Commissioner, 33 B. T. A. 708; Monarch Life Ins. Co. v. Commissioner, 38 B. T. A. 716; and Pan-American Life Ins. Co. v. Commissioner, 38 B. T. A. 1430.

[3] 112 F. 2d 468. Other circuits reached a like result: Commissioner v. Pan-American Life Ins. Co., 111 F. 2d 366 (C. C. A. 5); Commissioner v. Monarch Life Ins. Co., 114 F. 2d 314 (C. C. A. 1).

[4] New World Life Ins. Co. v. United States, 26 F. Supp. 444.

[5] 42 Stat. 261, § 245 (a) (2).

[6] 53 Stat. 72.

of corporate taxation and set up special systems applicable to them alone.[7] The new plan, as it related to life insurance companies, had as a major objective the elimination of premium receipts from the field of taxable income. It had long been pointed out to Congress that these receipts, except as to a very minor proportion of each premium, were not true income but were analogous to permanent capital investment.[8] In all the Revenue Acts from 1921 through 1939, the gross income of life insurance companies no longer included premium receipts, but was limited to income "from interest, dividends, and rents."[9] And, pursuant to the conceived analogy of reserves to capital investment, net income was to be determined by permitting, among other deductions from gross income, that same deduction here in dispute—a percentage of the "reserve funds required by law."

As entirely new and separate tax provisions relating only to life insurance companies were thus enacted, it became necessary specifically to define what constituted a "life insurance company" within the meaning of the Act. Therefore, it was declared in the 1921 Act and all its successors that "when used in this title the term 'life insurance company' means an insurance company engaged in the business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident insurance), the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds."[10]

---

[7] The history of this legislation is set out in *National Life Ins. Co. v. United States*, 277 U. S. 508, 523–524.

[8] See, e. g., S. Rep. No. 617, part 1, page 9, 65th Cong., 3d Sess.

[9] E. g., § 244 (a), Act of 1921, 42 Stat. 261; § 202 (a), Act of 1939, 53 Stat. 71.

[10] E. g., § 242, Act of 1921, 42 Stat. 261; § 201, Act of 1939, 53 Stat. 71. The government contends that the determinative ratio under this section is death reserves to total reserves; the insurance companies contend that the ratio is all reserves on the enumerated

Under the Congressional plan, there is granted a deduction based on those "reserve funds required by law." Section 203 (a) (2) grants this deduction; § 201 defines life insurance companies. It seems clear that Congress intended to permit the deduction of reserves based on those policies that make a company a "life insurance company" under the Act, which, by definition, includes policies of "combined life, health, and accident insurance." The reserves here related to the disability provisions of such combined policies. The same underlying considerations that prompted the deduction for death reserves are applicable to the reserves for disability in these combined policies. And disability as well as death reserves fall literally within the language of the deduction provision. It is not disputed that administrative regulations promulgated under every Revenue Act from 1921 through 1932 recognized the right of life insurance companies to take deductions both for death and for disability reserves on policies such as those here involved.[11] Nor is it denied that the 1934 reënactment of § 203 (a) (2) followed thirteen years of administrative regulation and practice under which substantially identical provisions had been so construed and applied that life insurance companies could and did obtain these deductions. During that entire period, the Treasury found no ambiguity in § 203 (a) (2), and expressed no doubt as to a life insurance company's right to make such deductions. But on February 11, 1935, regulations were promulgated asserting disability reserves to be non-deductible under the 1934 Act;[12] and

types of policies to total reserves. Since Oregon Mutual is admittedly a "life insurance company" regardless of which of these contentions is correct, this question is not before us.

[11] Article 681 of Regulations 62, 65, 69, and Article 971 of Regulations 74 and 77.

[12] Article 203 (a) (2) of Regulation 86.

on December 18, 1935, a Treasury Decision declared that this regulation applied retroactively to the 1932 and earlier Acts.[13] Petitioner now says that the former practice in permitting disability reserve deductions was erroneous,[14] and that the new regulation should be given full retroactive effect.

It is the Government's contention that the change in the regulations was particularly appropriate because induced by judicial decision.[15] And it is true that this Court has held that reserves set aside by life insurance companies to protect payment of policy investment purchases cannot be used as the basis for deductions.[16] But those decisions rested upon the conclusion that the investment fund features had no relation to the insurance risks. Here, in the combined life and health and accident policies, the health and accident reserves are based upon contingencies of the commencement and continuance of disability. They have a direct and inseparable relationship to the very insurance contracts which bring respondent under a special tax scheme.[17] Nor is there a distinction, as petitioner urges, between that part of the reserve set aside to protect policy holders not yet disabled and that part set aside to protect those already disabled. The liability to those who have incurred disability is not a fixed sum, but remains a contingency, still uncertain in

[13] T. D. 4615, XIV-2 Cum. Bull. 310.

[14] In support of the Commissioner's right to change the regulations under this supposed state of facts, the government cites *Manhattan General Equipment Co.* v. *Commissioner*, 297 U. S. 129, 134–135, and *Murphy Oil Co.* v. *Burnet*, 287 U. S. 299.

[15] Cf. *Morrissey* v. *Commissioner*, 296 U. S. 344, 355. The judicial decisions relied on are those cited in the following footnote.

[16] *Helvering* v. *Inter-Mountain Life Ins. Co.*, 294 U. S. 686; *Helvering* v. *Illinois Life Ins. Co.*, 299 U. S. 88.

[17] Cf. *Rhine* v. *New York Life Ins. Co.*, 273 N. Y. 1; 6 N. E. 2d 74; *Rubin* v. *Metropolitan Life Ins. Co.*, 278 N. Y. 625; 16 N. E. 2d 293.

-duration and amount. Reserves held for such a contingent liability are true reserves in the insurance sense.

We find it unnecessary to discuss the extent to which such a regulation might, under different circumstances, be given retroactive effect by virtue of the statutory power of the Commissioner.[18] Nor do we find it necessary to discuss the argument that the policy behind the special treatment afforded life insurance companies does not warrant allowing this deduction. For it is our conclusion that by § 203 (a) (2) of the 1932 and 1934 Acts, Congress has granted life insurance companies a deduction for disability reserves which only Congress can take away.[19]

*Affirmed.*

[18] For the Commissioner's power to promulgate retroactive regulations, petitioner relies on § 506 of the Revenue Act of 1934, which amended § 1108 (a) of the 1926 Act.

[19] *Biddle* v. *Commissioner,* 302 U. S. 573, 582; *Koshland* v. *Helvering,* 298 U. S. 441, 446–447.