AMERICAN STEAMSHIP OWNERS MUTUAL PROTECTION AND INDEMNITY ASSOCIATION, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102924. Promulgated February 6, 1942.

*E. Q. Kullman, Esq.,* for the petitioner.
*Walt Mandry, Esq.,* for the respondent.

### OPINION.

HILL: The Commissioner determined income tax deficiencies of $234.12, $1,458.11, and $663.26 for the calendar years 1936, 1937, and 1938, respectively. The petitioner claims overpayments in the amounts of $3,857.52, $2,244.91, and $2,459.04, the amounts of tax paid by petitioner in the respective years. Petitioner filed its return with the collector of internal revenue for the second district of New York.

This proceeding was submitted upon a stipulation of facts which incorporated certain attached exhibits. We find the facts as stipulated and set forth only those necessary to an understanding of the issues raised by the parties.

Petitioner is a nonstock protection and indemnity insurance company which was incorporated in New York during 1917. Petitioner furnishes its members, who are shipowners, with protection and indemnity insurance on a mutual assessment basis. The assessments are determined upon tonnage of each member and are payable in advance for each insurance year (February 20 to February 20). If the advance assessment is insufficient to pay the losses and expenses, a deficiency assessment is made; and if there is an excess over losses and expenses,

that excess is refundable to the members. No policies are issued and none other than members are insured. The insurance does not cover any risk which is covered by marine or hull insurance. The risks which are covered are set forth in the charter as follows:

### ARTICLE 3.

The kinds of business to be undertaken by this corporation and the insurance it shall have authority to make are as follows: Insurance upon the mutual assessment plan, in connection with vessels, (a) against liability for loss or damage resulting from personal injury to any person, (b) against liability for loss of or damage to or in connection with cargo or other property provided that such liability insured against by this association shall not exceed that which would be imposed by law in the absence of contract, (c) against liability for damage to other vessels or craft or to other property of any kind, (d) against loss by reason of general average sacrifices, allowances or liabilities, (e) against expense incident to quarantine detention, (f) against expenses in resisting claims or defending law suits growing out of any risk insured, and (g) against loss or liability incidental to or in respect of the ownership, operation or chartering of vessels, including legal expenses; but nothing herein contained shall be deemed to authorize or permit this corporation to make insurances upon the hull, machinery, freight moneys or disbursements of any vessel or upon cargo or other property transported. The corporation shall have power to reinsure any risks insured by it.

The bylaws are substantially similar except that the provisions are more detailed. They provide in part:

Sub-Sec. 6. Costs or expenses of or incidental to the removal of the wreck of an entered steamship; provided, however, that:

(a) Nothing is insured hereunder which is covered by the member's hull insurance, or if the steamship is uninsured such as would have been covered under customary form of hull insurance;

(b) From such costs and expenses shall be deducted the value of any salvage from or which might have been recovered from the wreck inuring, or which might have inured, to the benefit of the member.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Sub-Sec. 7. Expenses (other than wages) reasonably incurred in necessarily repatriating any member of the crew or any other person employed on board an entered steamship; provided, however, that no member shall be entitled to recover any such expenses incurred by reason of the expiration of the shipping agreement, other than by sea perils, or by the voluntary termination of the agreement.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Petitioner filed its return under section 116 (g) of the Revenue Acts of 1936 and 1938.[1] The deficiencies were determined by the

---

[1] SEC. 116. EXCLUSIONS FROM GROSS INCOME.

In addition to the items specified in section 22 (b), the following items shall not be included in gross income and shall be exempt from taxation under this title:

\*　　\*　　\*　　\*　　\*　　\*　　\*

(g) SHIPOWNERS' PROTECTION AND INDEMNITY ASSOCIATIONS.—The receipts of shipowners' mutual protection and indemnity associations not organized for profit, and no part of the net earnings of which inures to the benefit of any private shareholder; but such corporations shall be subject as other persons to the tax upon their net income from interest, dividends, and rents.

respondent because of numerous adjustments, but the only adjustment in issue in this proceeding is the disallowance of a portion of the claimed deductions. Respondent classified certain deductions as indirect expenses. The amounts which were so classified and the sums allowed as deductions and disallowed by the respondent are as follows:

| | 1936 | 1937 | 1938 |
|---|---|---|---|
| (a) Indirect expenses | $16,346.94 | $16,274.10 | $19,465.06 |
| (b) Allowed | 1,149.19 | 720.99 | 658.12 |
| (c) Not allowed | 15,197.75 | 15,553.11 | 18,806.94 |

The respondent failed to allow the amounts set forth in (c) above on the ground that the expenses should be prorated in accordance with the provisions of section 24 (a) (5) of the Revenue Acts of 1936 and 1938 and the regulations thereunder, as follows:

| | 1936 | 1937 | 1938 |
|---|---|---|---|
| NUMERATOR: | | | |
| (1) Interest | $44,789.98 | $35,966.58 | $27,375.62 |
| (2) Dividends | 8,759.80 | 6,539.80 | 3,869.20 |
| Total of numerator | 53,549.78 | 42,506.38 | 31,244.82 |
| DENOMINATOR: | | | |
| (I) Items (1) and (2) above | $53,549.78 | $42,506.38 | $31,244.82 |
| (II) Gross capital gain | 11,680.26 | 32,274.59 | 5,061.73 |
| (III) Assessments received | 695,459.49 | 884,651.52 | 887,714.61 |
| Total of denominator | 760,689.53 | 959,432.49 | 924,021.16 |
| Allocation | 53,549.78 | 42,506.38 | 31,244.82 |
| Allocation percentage | $760,689.53 | $959,432.49 | $924,021.16 |
| | 7.03% | 4.4303% | 3.381% |

Petitioner's capital losses were as follows: 1936, $4,391.06; 1937, $10,606.25; and 1938, $2,793.42.

The petitioner contends that it is exempt from tax by section 101 (11), or, if not so exempt, section 24 (a) (5) does not require any expenses to be allocated to the assessments, since the assessments are not income. If both of these issues are decided against the petitioner, then it contends that section 207 (c) (3)[2] grants a deduction to the amount of advance premiums held for repayment to the members and

[2] SEC. 207. MUTUAL INSURANCE COMPANIES OTHER THAN LIFE.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(c) DEDUCTIONS.—In addition to the deductions allowed to corporations by section 23 the following deductions to insurance companies shall also be allowed, unless otherwise allowed—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(3) MUTUAL INSURANCE COMPANIES OTHER THAN LIFE AND MARINE.—In the case of mutual insurance companies (including interinsurers and reciprocal underwriters, but not including mutual life or mutual marine insurance companies) requiring their members to make premium deposits to provide for losses and expenses, the amount of premium deposits returned to their policyholders and the amount of premium deposits retained for the payment of losses, expenses, and reinsurance reserves.

for payment of losses and expenses, thereby leaving no taxable income.

The first issue which we shall discuss is whether section 101 (11), which is substantially a reenactment of section 231 (11) of the Revenue Act of 1918, will exempt petitioner from all tax. Congress chose to legislate specifically for this petitioner. Sec. 116 (g). The legislative history bears out this conclusion. Congressional Record, vol. 61, p. 7182. Since section 101 (11) is a general statute, it must give way to the specific. *Rawlings Manufacturing Co.*, 44 B. T. A. 161. Furthermore, the business of petitioner was not limited to casualty insurance as defined by article 101 (11) of Regulations 94 and 101. See also Cooley, Briefs on the Law of Insurance, vol. 1, p. 6, for similar definition. Article IX of the bylaws, which is set forth in part above, gives the members various protections which can not be construed to be casualty insurance. Art. 101 (11), Regulations 94 and 101; Cooley, Briefs on the Law of Insurance, vol. 1, p. 6. We hold that petitioner is not exempt under section 101 (11).

The second issue appears to be simple and we would treat it peremptorily except for the strenuous argument of the petitioner on brief. Petitioner contends that section 24 (a) (5) does not bar the deduction of expenses allocable to the assessments because the assessments are not "income wholly exempt from taxes imposed by this title." He quotes the remarks of Senator Sutherland set forth in the Congressional Record, *supra*, with particular emphasis on the following:

* * * the amounts paid by these companies [petitioner specifically] are in no sense profits, and could not be considered as profits; * * *. This amendment simply makes clear what is very doubtful now, and declares that these assessments paid by these companies into this common fund for their mutual protection and not for profit are not income, and are therefore not taxable. * * *

Petitioner also cites the language from several cases as showing that the assessments are not income. *Helvering* v. *Oregon Mutual Life Insurance Co.*, 311 U. S. 267; *Valley Waste Disposal Co.*, 38 B. T. A. 452; *Board of Fire Underwriters of the City of Duluth*, 26 B. T. A. 860; *Growers Cold Storage Co.*, 17 B. T. A. 1279. We believe that in those cases the word "income" is used in the sense of "taxable income" and not as "something which comes in by way of addition or increment." Webster's New International Dictionary. Moreover, the placement of the provision which exempts the assessments made by petitioner from tax was in a section which exempts items which are income. Sec. 116 (a) and (b). We hold that the assessments are income "wholly exempt from the taxes imposed by this title" and that expenses allocable to that income are not deductible. Sec. 24 (a) (5). The formula employed by respondent for the allocation of expenses between income wholly exempt from tax and that not exempt from tax

should have included net capital gains instead of gross capital gains. With this modification, the formula provides a proper basis for such allocation. The inclusion of capital gains without a deduction for capital losses would result in allocating part of the expenses to the capital gains, but no part of the expenses to the capital losses. This would not be true in the case of an ordinary taxpayer and we do not believe that Congress intended to place a taxpayer with part of his income exempt in any worse position. Therefore, we hold that the capital losses should be deducted from the capital gains before inclusion in the formula to determine the amount of expenses allocable to the taxable and to the exempt income.

The final issue is whether petitioner is entitled to the deductions allowed by section 207 (c) (3). We think not. Congress expressly stated in section 116 (g) that this petitioner was to be taxable upon its net income from interest, dividends, and rents. The application of section 207 (c) (3) would make petitioner taxable upon the net income from interest and dividends, less the amount of premium deposits retained for the purposes specified in that section. The result would be a complete wiping out of taxable income contrary to the intent of Congress manifested in section 116 (g). Moreover, section 207 (c) (3) is a general provision which must give way to the specific provision of section 116 (g). *Rawlings Manufacturing Co., supra.*

*Decision will be entered under Rule 50.*