## NATIONAL PROTECTIVE INS. CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 12216.

Circuit Court of Appeals, Eighth Circuit.

June 30, 1942.

Ralph M. Russell, of Kansas City, Mo. (James P. Aylward, of Kansas City, Mo., on the brief), for petitioner.

Harry Marselli, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, and Edward H. Horton, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before GARDNER, WOODROUGH, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The question is whether petitioner is entitled to be classified as a "life insurance company" for income tax purposes, or whether it is subject to be taxed as "an

insurance company other than life or mutual".

Petitioner made its tax returns as a life insurance company, under sections 201–203 of the Revenue Acts of 1934 and 1936, 48 Stat. 731, 49 Stat. 1710, 26 U.S.C.A. Internal Revenue Acts, pages 729–732 and 898–900. Section 201(a) of these acts defines a life insurance company, for income tax purposes, as follows: "When used in this title the term 'life insurance company' means an insurance company engaged in the business of issuing life insurance and annuity contracts (including contracts of combined life, health, and accident insurance), the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds."

The Commissioner challenged petitioner's returns for the years 1935 and 1936, on the ground that it was not a life insurance company within the definition of section 201(a), since its reserves on its life insurance were far less in amount than those which it maintained on its separate health and accident insurance, and that it therefore constituted an insurance company other than life or mutual under the provisions of section 204, 26 U.S.C.A. Int.Rev.Acts, pages 732–734, 900–902, and was required to make its returns on the basis of that section. Deficiencies of $10,338.71 and $5,925.21, respectively, for the two years involved, were determined against petitioner under section 204. The Board of Tax Appeals upheld the Commissioner's determination, 44 B.T.A. 978, and petitioner has appealed from the decision of the Board.

Petitioner was a stock insurance company, incorporated under the laws of Missouri, and engaged in writing health and accident insurance and life insurance, solely within that state, on a "stipulated premium" basis. Its separate health and accident business constituted more than 98 per cent of its total premium income, and its life insurance less than 2 per cent. Thus, in 1935 its health and accident premiums amounted to $636,631.18 and its life insurance premiums to only $11,647.15, and in 1936 these premiums were, respectively, $688,001.41 and $12,911.80.

Under section 5764, Mo.Rev.St.1929, Mo. R.S.A. § 5875, petitioner was required to maintain standard death reserves on its life insurance contracts, consisting of such amounts out of the premiums as, improved with interest at $3\frac{1}{2}$ per cent per annum, would discharge its contingent liabilities on the basis of the American Experience Table. These reserves aggregated $10,037.89 in 1935 and $11,841.29 in 1936.

Petitioner had also set up uncarned premium reserves on its health and accident business, amounting to $98,622.85 for 1935 and $121,114.45 for 1936, although the Missouri statutes made no prescription for any reserves on such policies. The reserves had been established, however, pursuant to a provision in petitioner's articles of incorporation, and in accordance with a written agreement between petitioner and the State Superintendent of Insurance by whose terms the fund was to be built up and maintained in an amount equal to fifty per cent of the gross annual premiums on the health and accident business. This agreement recited that its purpose was to provide for the maintenance of unearned premium reserves on the part of petitioner, "equivalent to the reserves maintained by other companies doing a like business in this state" and on the basis "generally accepted and used by other insurance companies doing a like business". The unearned premium reserves were made to appear and were carried as a liability in petitioner's periodical reports to the state insurance department.

The foregoing facts quite clearly demonstrate that petitioner's business was essentially and predominantly that of a health and accident insurance company and that the writing of life insurance was rather a minor incident in its general operations. Notwithstanding this, petitioner insists that it is entitled to have its whole business classified as that of a life insurance company, under sections 201–203 of the Revenue Acts, and to receive the benefit of the favorable treatment which Congress has accorded such companies over other insurance companies for income tax purposes.[1] Its argument is that the unearned premium reserves which it had set up on its health and accident business were not

---

[1] "Prior to 1921, insurance companies * * * had been subject to the same tax plan as corporations generally; the 1921 Act, however, wholly exempted insurance companies from the general scheme of corporate taxation and set up special systems applicable to them alone. The new plan, as it related to life insurance companies, had as a major objective the elimination of premium re-

true insurance reserves, in that they were not based upon an experience or actuarial table, did not take into consideration earnings or interest on the fund, and were not used to pay contingent claims when the contingency insured against occurred;[2] that such reserves were not required by statutory provision or by rules and regulations of the state insurance department promulgated in the exercise of a power conferred by statute; that section 201(a) of the Revenue Acts, in classifying as a life insurance company any company engaged in writing life insurance, "the reserve funds of which held for the fulfillment of such contracts comprise more than 50 per centum of its total reserve funds", must be deemed to have had regard only for true insurance reserves required as a matter of state law; that, since the only true insurance reserves which petitioner was required to maintain on any of its insurance business under Missouri law were the death reserves on its life insurance contracts, it was entitled to be classified as a life insurance company under section 201 (a), because the reserve funds which it held for the fulfillment of its life insurance contracts accordingly comprised more than 50 per cent of the total true reserve funds required of it by law.

■ It hardly seems reasonable to believe that Congress intended to leave the way open for some other insurance company, such as a health and accident one, to claim to be entitled to have its business taxed as a life insurance company and to escape the burden of taxation upon its premium income generally, through the simple expedient of being authorized and undertaking to write a small and incidental amount of life insurance;[3] nor should the

statute be allowed to serve such an unnatural purpose, unless its language and implications inexorably compel this construction.

■ There is nothing in the language itself of section 201(a) that can be said to indicate that, for the purpose of classifying insurance companies generally, Congress was using the term "reserve funds" in the narrow, technical sense in which petitioner seeks to have it applied. The term "reserves" or "reserve funds" recognizedly has a broader, practical use and significance in the field of insurance than the technical definition for which petitioner contends, and we think that it was in the former, rather than in the latter sense, that it was employed for definition or classification purposes in section 201(a). It is a well known fact, publicized by the insurance companies themselves through financial statements and rating reports, that some form of basic reserve is now customarily set up on all kinds of insurance written on a fixed or stipulated premium basis. This is done as a matter of protective business prudence, as well as for possible competitive purposes, regardless of whether such reserves are specifically required by statute or not. In the life insurance field, perhaps because of its earlier development and the demonstrated need for uniform regulation, necessary reserves have now been prescribed by law in every state. Comparable regulation is extending itself into other insurance fields also.

But, even in those states and fields where no such regulation exists, experience and competition have generally established necessary and accepted standards for conducting the business, including the setting

---

ceipts from the field of taxable income. It had long been pointed out to Congress that these receipts, except as to a very minor proportion of each premium, were not true income but were analogous to permanent capital investment. In all the Revenue Acts from 1921 through 1939, the gross income of life insurance companies no longer included premium receipts, but was limited to income 'from interest, dividends, and rents'. And, pursuant to the conceived analogy of reserves to capital investment, net income was to be determined by permitting, among other deductions from gross income, * * * a percentage of the 'reserve funds required by law'." Helvering v. Oregon Mutual Life Ins. Co., 311

U.S. 267, 268, 269, 61 S.Ct. 207, 208, 85 L.Ed. 180.

2 Cf. Maryland Casualty Co. v. United States, 251 U.S. 342, 350, 40 S.Ct. 155, 64 L.Ed. 297; Helvering v. Inter-Mountain Life Ins. Co., 294 U.S. 686, 690, 55 S.Ct. 572, 79 L.Ed. 1227; Commissioner of Internal Revenue v. Monarch Life Ins. Co., 1 Cir., 114 F.2d 314, 319.

3 "The definition of a life insurance company as set forth in section 201(a) quoted above was enacted for the purpose of taxing insurance companies according to the predominant kind of insurance issued by them." New World Life Ins. Co. v. United States, Ct.Cl., 26 F.Supp. 444, 461.

up and maintenance of prudent and applicable reserves. Thus, in the situation before us, the agreement between petitioner and the State Superintendent of Insurance, previously referred to, establishes for purposes of this case that the unearned premium reserves which petitioner had agreed to maintain on its health and accident policies were "generally accepted and used by other insurance companies doing a like business".

■ We think that Congress duly had regard for this situation in attempting to formulate a practical definition of a life insurance company for income tax purposes, since any other construction of the statute would, as in the present situation, result in a wholly artificial and inequitable classification.[4] We accordingly hold, as did the Commissioner and the Board, that an insurance company engaged in writing separate contracts of life insurance and of health and accident insurance is not entitled to classification as a life insurance company, for income tax purposes, under section 201(a) of the Revenue Acts of 1934 and 1936, where the reserve funds held for the fulfillment of its life insurance contracts are less than the reserve funds maintained on its separate health and accident insurance contracts in accordance with common use and prudent practice in that field, even though no technical reserves may be required on such health and accident business as a matter of local law.

■ Petitioner argues that this construction ignores and is contrary to the use made of the term "reserve funds" in section 203(a) (2) of the Revenue Acts of 1934 and 1936[5] and in Articles 201(a)-1 and 203(a) (2)-1 of Treasury Regulations 86, promulgated under the Revenue Act of 1934 and Treasury Regulations 94, promulgated under the Revenue Act of 1936.[6]

---

[4] When the present plan of taxing insurance companies was first adopted in 1921, Dr. Adams, the United States Treasury Department expert, was interrogated before the Senate Finance Committee as follows (Hearings before the Senate Finance Committee, 67th Cong., 1st Sess., on H.R. 8245, Confidential Print, pp. 92, 93):

"Senator McCumber. Explain that 50 per cent of its total reserve funds, and why take 50 per cent instead of some other figure?

"Dr. Adams. Some companies mix with their life business, accident and health insurance. It is not practicable for all companies to disassociate those businesses so that we have assumed that if this accident and health business was more than 50 per cent of their business, as measured by their reserves, it could not be treated as a life insurance company. On the other hand, if their accident and health insurance were incidental and represented less than 50 per cent of their business we treated them as a life insurance company.

"Senator McCumber. Suppose that you have those companies in which a certain portion of their business is life insurance and other casualty of any kind, and you have two systems of levying taxes?

"Dr. Adams. You do not under the House Bill.

"Senator McCumber. How do you levy the tax under the two kinds of business in the hands of one company?

"Dr. Adams. You do not under the House Bill. You did originally under the original suggestion of the Treasury Department, but the House Bill now treats them all alike.

"Senator Dillingham. In other words, unless a company has a reserve of over 50 per cent on life insurance and annuity contracts it is not a life insurance company?

"Dr. Adams. No. * * *."

[5] "§ 203. Net Income of Life Insurance Companies

"(a) General rule. In the case of a life insurance company the term 'net income' means the gross income loss less—

* * * * *

"(2) Reserve funds. An amount equal to 4 per centum of the mean of the reserve funds required by law and held at the beginning and end of the taxable year, except that in the case of any such reserve fund which is computed at a lower interest assumption rate, the rate of 3¾ per centum shall be substituted for 4 per centum. Life insurance companies issuing policies covering life, health, and accident insurance combined in one policy issued on the weekly premium payment plan, continuing for life and not subject to cancellation, shall be allowed, in addition to the above, a deduction of 3¾ per centum of the mean of such reserve funds (not required by law) held at the beginning and end of the taxable year, as the Commissioner finds to be necessary for the protection of the holders of such policies only." 26 U.S.C.A. Int.Rev.Acts, pages 730, 899.

[6] These Regulations provide:

Art. 201(a)-1. "Life insurance companies: Definition.—The term 'life insurance company' as used in Title I is de-

But sections 201 and 203 are intended to serve two wholly different purposes and there is no necessary dependence or controlling relationship between them. Section 201 is a mere definition or classification statute, while section 203 is one of tax deduction right or privilege after ·the qualifications of section 201 have been fully met.[7] It is not unnatural that Congress should have imposed limitations upon the class of reserve funds which would be subject to deduction for income tax purposes by a life insurance company, that were not intended to have application or significance in determining initially whether the company was entitled to classification as a life insurance company under the general definition or classification statute. In fact, the specific reference in section 203 to both "reserve funds required by law" and "reserve funds (not required by law)", when contrasted with the use of the general and unqualified term "total reserve funds" in section 201, would seem to confirm that Congress had designed to leave the way open, in a classification situation, for a consideration of both forms of reserve, in order to avoid reaching an unnatural and inequitable result.

■ The provision of Article 201(a)-1 of the Treasury Regulations· referred to, that "In determining whether an insurance company is a 'life insurance company' as defined in section 201(a), no reserve shall be regarded as held for the fulfillment of an insurance contract unless it conforms to the definition of 'reserve' contained in Article 203(a)-1", is an attempt by the Treasury Department to define the reserves which are to be taken into account on life insurance contracts for classification purposes under section 201(a) of the statute. This is obvious from the fact that the Regulation incorporates part of the language of section 201(a) relating only to life insurance reserves and makes reference to Article 203(a) (2)-1 of the Regulations governing exclusively the matter of deduction of life insurance reserves for tax purposes. The Regulation cannot be said to have intended to, nor does it, prevent a consideration of the common and prudent reserve funds maintained by a company on its insurance contracts other than life, even though such reserves are not required by law, in order to determine under section 201(a) whether an insurance company is in fact a life insurance company. Whether this attempted limitation upon the life insurance reserves entitled to be considered under section 201(a) is meaningful or valid is not material or of interest here.

The decision of the Board of Tax Appeals is affirmed.

---

fined in section 201(a). In determining whether an insurance company is a 'life insurance company' as defined in section 201(a), no reserve shall be regarded as held for the fulfillment of an insurance contract unless it conforms to the definition of 'reserve' contained in article 203 (a) (2)-1."

Art. 203(a) (2)-1. "Reserve funds.—In general, the reserve contemplated is a sum of money, variously computed or estimated, which, with accretions from interest, is set aside (reserved) as a fund with which to mature or liquidate, either · by payment or reinsurance with other companies, future unaccrued and contingent claims. It must be required either by express statutory provisions or by rules and regulations of the insurance department of a State, Territory, or the District of Columbia when promulgated in the exercise of a power conferred by statute, but such requirement, without more, is not conclusive; for example, it does not include reserves required to be maintained to provide for the ordinary running expenses of a business definite in amount, and which must be currently paid by every company from its income if its business is to continue, such as taxes, salaries, reinsurance and unpaid brokerage; the reserve or net value of risks reinsured in other solvent companies to the extent of the reinsurance; reserve for premiums paid in advance; annual and deferred dividends; accrued but unsettled policy claims; losses incurred but unreported; liability on supplementary contracts not involving life contingencies; estimated value of future premiums which have been waived on policies after proof of total and permanent disability. * * *"

[7] "* * * The use of the word ["reserves"] in Section 201(a) is for classification only and is quite different from the purpose of the word as used in Section 203(a) (2)." Commissioner of Internal Revenue v. Monarch Life Ins. Co., 1 Cir., 114 F.2d 314, 325.