**PRINCIPAL MUTUAL LIFE INSURANCE COMPANY,** Plaintiff–Appellant,

v.

**The UNITED STATES, Defendant/Cross–Appellant.**

No. 94–5072, 94–5089.

United States Court of Appeals, Federal Circuit.

March 20, 1995.

Rehearing Denied; Suggestion for Rehearing In Banc Declined May 30, 1995.

Bruce Graves, Brown, Winick, Graves, Donnelly, Baskerville & Schoenebaum, P.L.C., Des Moines, IA, argued, for plaintiff-appellant. With him on the brief was Harold N. Schneebeck.

Robert W. Metzler, Atty., Dept. of Justice, Washington, DC, argued, for defendant/cross-appellant. With him on the brief were Loretta C. Argrett, Asst. Atty. Gen., Gary R. Allen and David I. Pincus, Attys.

Before RICH, CLEVENGER, and RADER, Circuit Judges.

CLEVENGER, Circuit Judge.

Principal Mutual Life Insurance Company appeals the judgment of the United States Court of Federal Claims granting-in-part and denying-in-part the parties' cross-motions for summary judgment. *Principal Mut. Life Ins. Co. v. United States,* 26 Cl.Ct. 616 (1992). The Government cross-appeals. The court held, *inter alia,* that funds set aside by Principal to meet its future benefit payment obligations under its group health and accident insurance policies were not deductible from income in tax years 1977 and 1978 as "life insurance reserves" under 26 U.S.C. § 801(b)(1) (1982).[1] In contrast, the court held that the fees paid by Principal to reimburse the costs of an Iowa state examination of its business affairs and financial condition were deductible in those tax years as "invest-

ment expenses" under 26 U.S.C. § 804(c)(1) (1982). We affirm.

## I

During 1977 and 1978, Principal (formerly Bankers Life Company) provided group health and accident insurance coverage to individuals employed by policyholders. Principal reserved the right to change the premium annually and the right to cancel employee coverage at any time after the policy's initial one-year term upon proper notice to the employer. Although devoid of any renewal obligation on Principal's part, these policies encumbered Principal with a fixed-benefit payment obligation whenever a covered individual became disabled. Principal was required to pay benefits to a disabled employee until age 65, recovery from the disability, or death, whichever occurred first, even if meanwhile the policy lapsed due to cancellation of the policy or failure to pay the required premium.

As required by Iowa state law, Principal set aside funds in reserve accounts to cover its estimated future benefit payment obligations. When Principal issued a policy, it established for each covered employee an "active" lives reserve that contained funds equal to Principal's estimated payment obligation in the event the employee became disabled. Upon such a disability, Principal eliminated the employee's active lives reserve and transferred those funds into a new "disabled" lives reserve. Each disabled lives reserve contained funds equal to Principal's estimated payment obligation. If the disabled employee recovered and returned to work with the group policyholder, Principal would re-establish an active lives reserve for that employee with funds transferred back from the disabled lives reserve. In 1977 and 1978, Principal respectively set aside $44,475,492 and $53,104,956 in its disabled lives reserves. Principal deducted these amounts on its 1977 and 1978 income tax returns as "life insurance reserves" under § 801(b)(1).

---

1. The Life Insurance Company Income Tax Act of 1959, Pub.L. No. 86–69, 73 Stat. 112 (codified in relevant part at 26 U.S.C. §§ 801–805 (1982)), controls Principal's tax liability in this case. Unless otherwise indicated, all citations to the U.S. Code refer to its 1982 version.

In 1977, the Iowa State Insurance Department examined Principal's business affairs and financial condition for the period 1973 to 1976. Principal reimbursed the Department for the cost of this routine state inspection, paying $65,145 in 1977, and $301 in 1978. In its 1977 and 1978 income tax returns, Principal deducted from income 65 percent of these amounts as "investment expenses" under § 804(c)(1).

In August 1981, the Internal Revenue Service (IRS) assessed against Principal an income tax deficiency for tax years 1977 and 1978. Principal paid the assessments and interest, but filed a claim seeking refund of the amounts paid. In November 1985, the IRS issued a notice of partial disallowance of Principal's refund claim. Principal filed suit in the Court of Federal Claims [2] on August 13, 1987, seeking the remaining disallowed amounts.

## II

In ruling on the parties' cross-motions for summary judgment, the Court of Federal Claims held, *inter alia*, that funds in Principal's disabled lives reserves were not deductible from income as "life insurance reserves" because Principal's health and accident insurance policies were not "noncancellable" contracts as required by § 801(b)(1). Following the reasoning of *United Benefit Life Insurance Co. v. McCrory*, 414 F.2d 928 (8th Cir. 1969), *cert. denied*, 396 U.S. 1039, 90 S.Ct. 687, 24 L.Ed.2d 684 (1970), the court concluded that an insurance policy was noncancellable only if its terms were unalterable when the policy issued. *Principal*, 26 Cl.Ct. at 630. Principal contended that even though its insurance policies were not noncancellable when issued, its disabled lives reserves nonetheless satisfied the requirements of § 801(b)(1) because Principal's payment obligation under these policies became fixed, *i.e.*, noncancellable, upon the disability of a covered employee. Under Principal's suggested statutory construction, essentially all disabled lives reserves would qualify as life insurance reserves under § 801(b)(1) because

disabled lives reserves, by their very nature, involve policies only after the invocation of a fixed-payment obligation. The court thus rejected Principal's construction because it improperly rendered meaningless the statute's distinction between reserves based on noncancellable contracts and those based on cancellable contracts.

In addition, the court held that Principal's reimbursements of state examination costs were deductible from income as "investment expenses" under § 804(c)(1). Following the test set forth in *New World Life Insurance Co. v. United States*, 26 F.Supp. 444 (Ct.Cl. 1939), *aff'd*, 311 U.S. 620, 61 S.Ct. 314, 85 L.Ed. 393 (1940), the court determined that the fees paid by Principal were general expenses "reasonably related to investment activity and reasonably susceptible of division and assignment to the investment department." *Principal*, 26 Cl.Ct. at 636. Concluding that *New World* constituted binding precedent, the court refused to apply the test set forth later in *Ohio National Life Insurance Co. v. United States*, 11 Cl.Ct. 477, *aff'd*, 807 F.2d 1577 (Fed.Cir.1986), which limited the definition of "investment expenses" to "those general expenses that bear a *causal* connection with investment income, *i.e.*, those particular costs which ... owe their existence entirely to the activities of the investment department." *Principal*, 26 Cl.Ct. at 634 (quoting *Ohio National*, 11 Cl.Ct. at 480) (emphasis in original).

The parties timely appealed the Court of Federal Claims decision with respect to the disabled lives reserves and state examination fees issues. We have jurisdiction over the appeals pursuant to 28 U.S.C. § 1295(a)(3) (Supp. V 1993).

## III

■ This court reviews judgments of the Court of Federal Claims to determine if they are premised on clearly erroneous factual determinations or otherwise incorrect as a matter of law. *Dairyland Power Coop. v. United States*, 16 F.3d 1197, 1201 (Fed.Cir.

---

**2.** Effective October 29, 1992, the United States Claims Court became the United States Court of Federal Claims. Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506, 4516. For simplicity, we refer to it throughout by its new name.

1994). We review *de novo* whether the Court of Federal Claims properly granted summary judgment. *Id.* Neither party contends that this case presents a genuine issue as to any material fact.

## A

■ On appeal, Principal argues that the § 801(b)(1) requirement that life insurance reserves be based on noncancellable health and accident insurance contracts is inapplicable to disabled lives reserves. Principal asserts that the addition to the statute of the phrase "noncancellable health and accident insurance contracts" in the Revenue Act of 1942, Pub.L. No. 56–753, sec. 163(a), § 201(c)(2), 56 Stat. 798, 868, "had nothing whatsoever to do with disabled lives reserves," but pertained solely and exclusively to active lives reserves. According to Principal, "[n]othing contained in the Revenue Act of 1942, or in its legislative history, indicated any intention on the part of Congress to legislatively overrule the holdings of [*Helvering v. Oregon Mutual Life Insurance Co.*, 311 U.S. 267, 61 S.Ct. 207, 85 L.Ed. 180 (1940), *Helvering v. Pan–American Life Insurance Co.*, 311 U.S. 272, 61 S.Ct. 210, 85 L.Ed. 183 (1940), and *Commissioner v. Monarch Life Insurance Co.*, 114 F.2d 314 (1st Cir.1940) ] that disabled lives reserves are entitled to be treated as life insurance reserves." The Eighth Circuit, however, rejected this argument in *United Benefit. See* 414 F.2d at 933–36.

Section 801(b)(1) reads:

For purposes of this part, the term "life insurance reserves" means amounts—

(A) which are computed or estimated on the basis of recognized mortality or morbidity tables and assumed rates of interests [sic], and

(B) which are set aside to mature or liquidate, either by payment or reinsurance, future unaccrued claims arising from life insurance, annuity, and *noncancellable health and accident insurance contracts* (including life insurance or annuity contracts combined with noncancellable health and accident insurance) involving, at the time with respect to which the reserve is computed, life,

health, or accident contingencies. (emphasis added).

Plainly read, § 801(b)(1) makes no distinction between active and disabled lives reserves. Absent a clearly expressed legislative intent to the contrary, we must ordinarily regard the plain language of the statute as conclusive. *See Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). In order to prevail, Principal therefore must point to a clearly expressed legislative intent to create an exemption in § 801(b)(1) for disabled lives reserves.

Based on its assertion that the general legislative purpose of the 1942 Act was to expand the scope of favorable tax treatment for insurance companies, Principal argues that Congress would not have intended to make it more difficult for disabled lives reserves to qualify as "life insurance reserves" by additionally requiring that disabled lives reserves be based on noncancellable health and accident insurance contracts. While the 1942 Act indeed broadened the group of companies that could qualify as life insurance companies for income tax purposes, the Act's general legislative purpose instead was to raise revenue in response to the Government's increased financial need caused by the country's participation in World War II. *See* H.R.Rep. No. 2333, 77th Cong., 2d Sess. 1–2 (1942). In addition, Congress recognized that "[u]nder existing law life insurance companies pay a comparatively small amount of income tax." S.Rep. No. 1631, 77th Cong., 2d Sess. 142 (1942).

We remain unaware of any legislative history to the 1942 Act that distinguishes between active and disabled lives reserves. Congress specified that the 1942 Act's definition of "life insurance reserves" is

substantially that contained for many years in the regulations *with the addition that* the reserves must be based on recognized mortality or morbidity tables, *the health and accident reserves must be noncancellable,* and unpaid loss reserves on such health and accident contracts are included if computed on a discount basis.

*Id.* at 145 (emphasis added). Notwithstanding the legislative history's silence on the matter, the presumption exists that Congress fully considered the *Oregon Mutual, Pan–American,* and *Monarch* cases when amending the statute to add the limitation that life insurance reserves must be based on noncancellable insurance contracts. Nothing in the legislative history demonstrates that Congress, because of the cases cited by Principal, intended the statute to include, as "life insurance reserves," disabled lives reserves under *cancellable* health and accident insurance contracts. The 1942 statute, insofar as relevant to this case, dealt with the difference between cancellable and noncancellable policies, not the difference between active and disabled lives reserves. In any event, we hold that disabled lives reserves must be based on noncancellable insurance contracts in order to qualify as "life insurance reserves" under § 801(b)(1).

### B

On cross-appeal, the Government argues that the Court of Federal Claims erred in refusing to follow the test set forth in *Ohio National.* The Government does not dispute that *New World* is binding precedent on this court and the Court of Federal Claims. *See South Corp. v. United States,* 690 F.2d 1368, 1371, 215 USPQ 657, 658 (Fed.Cir.1982) (adopting decisions of the Court of Claims as binding precedents); *West Seattle Gen. Hosp., Inc. v. United States,* 1 Cl.Ct. 745, 746 (1983) (published decisions of the Federal Circuit constitute binding precedent on the Court of Federal Claims). Instead, the Government argues that *Ohio National* is also binding precedent because this court's holding in *Ohio National* merely refined, and is not inconsistent with, the holding of our predecessor court in *New World.*

We need not decide, however, whether the holdings in *New World* and *Ohio National* are inconsistent. In *Ohio National,* this court merely affirmed the judgment "[o]n the basis of the opinion of the [Court of Federal Claims]." 807 F.2d at 1577. The test set forth by the Court of Federal Claims in *Ohio National* for the deductibility of costs as "investment expenses" under

§ 804(c)(1), even if inconsistent with the rule stated in *New World,* is therefore without binding effect. *Cf. Jackson Jordan, Inc. v. Plasser Am. Corp.,* 747 F.2d 1567, 1580 n. 10, 224 USPQ 1, 10 n. 10 (Fed.Cir.1984) ("By affirming 'on the basis of' the trial court's opinion, this court does not thereby adopt the opinion as binding precedent.").

As set forth in *New World,* the requirement that "investment expenses" under § 804(c)(1) be general expenses reasonably related to investment activity and reasonably susceptible of division and assignment to the investment department, 26 F.Supp. at 459, thus controls the issue in this case. Because the Government does not challenge the determination that Principal's reimbursed state examination fees were proper "investment expenses" under the *New World* test, we hold that the Court of Federal Claims correctly concluded that Principal was entitled to deduct such costs under § 804(c)(1).

### IV

For the reasons set forth, the judgment of the Court of Federal Claims with respect to the disabled lives reserves and state examination fees issues is

*AFFIRMED.*