T.C. Memo. 2000-134


UNITED STATES TAX COURT


BEST LIFE ASSURANCE COMPANY OF CALIFORNIA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11579-96.                    Filed April 12, 2000.


        <u>Held</u>:  Accrued unpaid losses on cancelable
accident and health insurance policies are not to be
treated as part of total reserves in the life insurance
company qualifying fraction, and petitioner therefore
qualifies as a "life insurance company" under sec.
816(a), I.R.C.  Statements made in <u>United States v.
Occidental Life Ins. Co.</u>, 385 F.2d 1 (9th Cir. 1967)
(the Court of Appeals to which an appeal herein would
lie), do not control our holding herein.


        <u>Michael R. Schlessinger</u> and <u>Michael A. Clark</u>, for

petitioner.

        <u>Milton J. Carter, Jr.</u>, <u>Gregory M. Hahn</u>, and <u>Keith G. Medleau</u>,

for respondent.

MEMORANDUM OPINION

SWIFT, <u>Judge</u>:  For 1991 and 1992, respondent determined deficiencies in petitioner's Federal income taxes of $369,255 and $242,132, respectively.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After settlement of some issues, the issue for decision is whether petitioner (Best Life), in computing under section 816(a) the qualifying fraction for life insurance company tax treatment, should treat accrued unpaid losses on cancelable accident and health (CA&H) insurance policies as part of its total reserves.

## Background

This case was submitted fully stipulated under Rule 122, and the facts are not in dispute.

During the years in issue, Best Life operated as an insurance company with its principal place of business located in Irvine, California.  Best Life insured the following types of insurance risks:  Individual ordinary life, cancelable group-term life, and CA&H.

Insurance companies are required by insurance regulators to maintain certain reserves to assure payment of future claims. All 50 States have adopted model regulations and utilize annual

statement forms (Annual Statements) promulgated by the National Association of Insurance Commissioners (NAIC) to calculate the amount and to report minimum reserves that insurance companies are required to maintain with respect to their outstanding individual and group health insurance policies. See, e.g., Cal. Code Regs. tit. 10, secs. 2311-2315 (1999).

Since the 1930's, on December 31 of each year (the valuation date), life and accident and health (LA&H) insurance companies have been required under the above NAIC regulations to report on the Annual Statements the amount of their particular obligations either as "liabilities" or as "reserves".

Liabilities, as reflected on Exhibit 11 of the Annual Statements, correspond to claims for which the insurance companies are currently liable including estimates of claims that as of the valuation date have accrued but that have not yet been reported to the companies.

Reserves, as reflected on Exhibits 8 and 9 of the Annual Statements, correspond to claims (computed using recognized mortality and morbidity tables) for which the insurance companies as of the valuation date are expected to become liable some time in the future. On the Annual Statements, liabilities correspond to accrued claims, and reserves correspond to unaccrued claims.

For the years in issue, the following schedule reflects, as indicated on its Annual Statements, the computation by Best Life

of its accrued liabilities and of its unaccrued reserves for 1991
and 1992:

| Reported on Annual Statements | 1991 | 1992 |
|---|---|---|
| Accrued liabilities | | |
|   Exhibit 11, CA&H/Medical | $2,666,371 | $2,494,121 |
| | ========== | ========== |
| Unaccrued reserves | | |
|   Exhibit 8, Ordinary & Group-Term Life | 1,669,727 | 2,089,797 |
|   Exhibit 9, CA&H/Disability | 419,786 | 442,261 |
|     Total unaccrued reserves | 2,089,513 | 2,532,058 |
| | ========== | ========== |

## Discussion

Since 1921, Congress has enacted separate rules of taxation
for life insurance companies and nonlife insurance companies.
Compare sections 801 through 818 with sections 831 through 835.
Generally, insurance companies qualify as life insurance
companies and are entitled to the related special tax treatment
if more than 50 percent of their total reserves represent life
insurance company reserves as defined in section 816(a).  Section
816, in pertinent part below, provides the following description
of the elements of the life insurance company qualifying 50-
percent fraction and of life insurance total reserves.

> SEC. 816(a). Life Insurance Company Defined.-- For
> purposes of this subtitle, the term "life insurance
> company" means an insurance company which is engaged in
> the business of issuing life insurance and annuity

contracts (either separately or combined with accident and health insurance), or noncancellable contracts of health and accident insurance, if--

    (1) its life insurance reserves * * *, plus

    (2) unearned premiums, and unpaid losses (whether or not ascertained), on noncancellable life, accident, or health policies not included in life insurance reserves,

comprise more than 50 percent of its total reserves (as defined in subsection (c)). * * *

    *     *     *     *     *     *     *

    (c) Total Reserves Defined.--For purposes of subsection (a), the term "total reserves" means--

    (1) life insurance reserves,

    (2) unearned premiums, and unpaid losses (whether or not ascertained), not included in life insurance reserves, and

    (3) all other insurance reserves required by law.

The equation below summarizes the statutory elements of

the section 816(a) life insurance company qualifying fraction:

| Numerator | | Denominator | | Ratio |
|---|---|---|---|---|
| Life insurance reserves **+** | | Life insurance reserves **+** | | Percentage |
| Unpaid losses on noncancelable life, | **÷** | Unpaid losses **+** | **=** | of life |
| health, and accident claims | | All other reserves | | insurance reserves |

In their computations of total life insurance company

reserves, the parties agree that the only dispute herein involves

whether the term "unpaid losses" in the denominator of the life

insurance company qualifying fraction includes <u>accrued</u> unpaid losses on CA&H insurance policies.[1]

Best Life argues that the term "unpaid losses" in section 816(c)(2) refers only to <u>unaccrued</u> unpaid losses corresponding to the amounts reflected on Exhibits 8 and 9 of its Annual Statements. Best Life argues that <u>accrued</u> unpaid losses reflect current liabilities, not reserves in the NAIC Annual Statement sense, and that they should not be included in the denominator of the qualifying fraction as part of an insurance company's total reserves. Accordingly, for 1991 and 1992, Best Life calculated that it qualified as a life insurance company under section 816 and timely filed U.S. Life Insurance Company income tax returns claiming life insurance company treatment and deductions under section 806 in the amounts of $615,971 and $712,152, respectively.

On audit, respondent treated the accrued amounts (shown on Exhibit 11 of Best Life's Annual Statements) as unpaid losses in

---

[1] The following schedule reflects the parties' conflicting computations herein of Best Life's life insurance company qualifying fraction under section 816:

For 1991:
    Best Life:      $1,669,727 ÷ 2,089,513 = 79.9% Life Reserves
    Respondent:     $1,669,727 ÷ 4,755,844 = 35.1% Life Reserves

For 1992:
    Best Life:      $2,089,797 ÷ 2,532,058 = 82.5% Life Reserves
    Respondent:     $2,089,797 ÷ 5,026,179 = 41.6% Life Reserves

the denominator of Best Life's life insurance company qualifying fraction. Based thereon, respondent determined that Best Life did not qualify as a life insurance company as defined under section 816(a). Accordingly, respondent disallowed the claimed life insurance company deductions under section 806.

We recently decided this same issue in favor of another insurance company in Central Reserve Life Corp. & Subs. v. Commissioner, 113 T.C. 231 (1999), which followed the Court of Appeals for the Seventh Circuit's 1992 opinion and analysis in Harco Holdings, Inc. v. United States, 977 F.2d 1027, 1029 (7th Cir. 1992), revg. 754 F. Supp. 130 (N.D. Ill. 1990). We follow the holdings and the analyses set forth in those two opinions.

Therein, it is recognized that Congress promulgated sections 801 through 818 using the specialized language of the insurance industry and that Congress generally intended the language of sections 801 through 818 to be given the technical meaning used by the insurance industry. See Harco Holdings, Inc. v. United States, 977 F.2d at 1030; Central Natl. Life Ins. Co. v. United States, 216 Ct. Cl. 290, 574 F.2d 1067, 1074 (1978) ("the definitions combine the 'labyrinthine composition' of the tax law with the 'mystic processes' in life insurance reserves; they were not 'written for ordinary folk.'")(fn. ref. omitted); Alinco Life Ins. Co. v. United States, 178 Ct. Cl. 813, 373 F.2d 336, 352-353

(1967); <u>Central Reserve Life Corp. & Subs. v. Commissioner</u>, <u>supra</u> at 244.

As we understand the history behind the life insurance company qualifying fraction and the terms "unpaid losses" and "reserves" in the LA&H industry, Congress considered and intended that total reserves under section 816 include only "future, unaccrued, and contingent amounts". <u>Harco Holdings, Inc. v. United States</u>, <u>supra</u> at 1031; <u>Alinco Life Ins. Co. v. United States</u>, <u>supra</u> at 347-349; <u>Commissioner v. Monarch Life Ins. Co.</u>, 114 F.2d 314, 325 (1st Cir. 1940), affg. 38 B.T.A. 716 (1938). The Supreme Court has specifically held that, in the accident and health insurance industry, unpaid losses constitute reserves only as long as they are not accrued. See <u>Helvering v. Oregon Mut. Life Ins. Co.</u>, 311 U.S. 267, 271-272 (1940); <u>Harco Holdings, Inc. v. United States</u>, <u>supra</u>.

Since the late 1930's, when NAIC first developed the predecessors to current LA&H industry regulations and the Annual Statement forms, the insurance industry and the Annual Statements have consistently separated future policy claim reserves (unaccrued unpaid losses on Exhibits 8 and 9) from accrued losses (on Exhibit 11). Because the distinction between "reserves" and "liabilities" has been present in LA&H accounting throughout the relevant tax provisions, NAIC's treatment of accrued unpaid losses on the Annual Statements represents an "authoritative

interpretive guide" as to the item's treatment for Federal income tax purposes.  See <u>Harco Holdings, Inc. v. United States</u>, <u>supra</u> at 1031; <u>Central Reserve Life Corp. & Subs. v. Commissioner</u>, <u>supra</u> at 242.  As explained in <u>Harco Holdings, Inc. v. United States</u>, <u>supra</u> at 1033:

> We do not accept the NAIC's treatment of unpaid losses as the definitive answer to the question before us. Nevertheless, absent indications to the contrary, we think it likely that Congress meant to enact a taxation scheme that defines reserves and treats unpaid losses as the NAIC does.  The Annual Statement may not be definitive, but it is an authoritative interpretive guide to the meaning of the statute.  [Fn. ref. omitted.]

Congress also has mandated some measure of deference to NAIC accounting principles by stating in section 811(a) that all computations with regard to methods of accounting "shall be made in a manner consistent with the manner required for purposes of the annual statement approved by the [NAIC]."  See also <u>Harco Holdings, Inc. v. United States</u>, <u>supra</u>.

We conclude that the term "unpaid losses" has acquired a specialized meaning in the LA&H industry that includes only those unpaid losses that represent actual reserves in the NAIC sense; i.e., unaccrued unpaid losses.  Accrued unpaid losses reflect liabilities and are not to be included in the denominator of the life insurance company qualifying fraction under section 816. See <u>Harco Holdings, Inc. v. United States</u>, <u>supra</u>; <u>Central Natl.</u>

Life Ins. Co. v. Unites States, supra; Alinco Life Ins. Co. v. United States, supra; Central Reserve Life Corp. & Subs. v. Commissioner, supra.  But see Prudential Ins. Co. v. United States, 162 Ct. Cl. 55, 319 F.2d 161, 165-166 (1963).

Respondent argues that since Congress did not expressly distinguish between accrued and unaccrued unpaid losses, the plain language of section 816 requires that all unpaid losses on CA&H insurance policies (whether accrued or unaccrued) should be included in the denominator of the life insurance company qualifying fraction.  Use by Congress of the word "unaccrued" in section 816(b)(1)(B) does suggest that Congress knew how to distinguish between accrued and unaccrued losses when it wanted to, and, while respondent's plain meaning argument has some appeal, we nevertheless recognize the historical context and the specialized meaning in the LA&H industry of the terms "unpaid losses" and "reserves".

Respondent also argues that under the Golsen rule we should defer to a statement made in United States v. Occidental Life Ins. Co., 385 F.2d 1, 6 (9th Cir. 1967), by the Court of Appeals for the Ninth Circuit (to which an appeal herein would lie) to the effect that the term "unpaid losses" under former section 806 includes accrued unpaid losses.  See Golsen v. Commissioner, 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971).

The Golsen rule, however, applies only where the relevant Court of Appeals' decision is "squarely in point":

> We shall remain able to foster uniformity by giving effect to our own views in cases appealable to courts whose views have not yet been expressed, and, even where the relevant Court of Appeals has already made its views known, by explaining why we agree or disagree with the precedent that we feel constrained to follow. [Id. at 757.]

The Golsen rule does not apply where the precedent from the Court of Appeals constitutes dicta or contains distinguishable facts or law. See, e.g., Hefti v. Commissioner, 97 T.C. 180, 187 (1991) (dictum not controlling), affd. 983 F.2d 868 (8th Cir. 1993); Metzger Trust v. Commissioner, 76 T.C. 42, 72-74 (1981) (factual distinctions render Golsen rule not squarely on point), affd. 693 F.2d 459 (5th Cir. 1982); Kueneman v. Commissioner, 68 T.C. 609, 612 n.4 (1977) (distinct legal question not governed by the Golsen rule), affd. 628 F.2d 1196 (9th Cir. 1980). As we stated in Lardas v. Commissioner, 99 T.C. 490, 493-495 (1992), the Golsen rule only applies where the "clearly established" position of a Court of Appeals signals "inevitable" reversal upon appeal.

In United States v. Occidental Life Ins. Co., supra, the Court of Appeals for the Ninth Circuit analyzed the meaning of the term "unpaid losses" under former section 806(c), a tax deduction provision repealed in 1959. In that case, the parties stipulated that unpaid losses in section 801 (now section 816)

had the same meaning as unpaid losses in former section 806. The Court of Appeals for the Ninth Circuit reached its ultimate conclusion on the meaning of unpaid losses under former section 806 and construed the language of section 801 merely as support. Making clear its marginal reliance on its interpretation of the language of section 801, the Court of Appeals for the Ninth Circuit in Occidental Life Ins. Co. stated as follows:

> Although an examination of section 801 along these comparative lines is not required for a conclusion as to the meaning of "unpaid losses" in section 806, our interpretation of section 801 [now section 816] is nevertheless persuasive in support of the result which we reach. [United States v. Occidental Life Ins. Co., supra at 5-6.]

The Court of Appeals for the Ninth Circuit has traditionally accorded statements not necessary to its decision little precedential weight. See, e.g., Export Group v. Reef Indus., Inc., 54 F.3d 1466, 1471-1472 (9th Cir. 1995) ("statements not necessary to the decision" reflect dicta and not binding precedent). The Court of Appeals for the Ninth Circuit's statements and analysis in Occidental Life Ins. Co. do not clearly establish a position on the meaning of the term "unpaid losses" under current section 816 that signals to us an inevitable reversal upon appeal. Therefore, the Golsen rule is not applicable to our resolution of the issue in this case.

We conclude that, for the years in issue, because its accrued unpaid losses on CA&H insurance policies are not to be included in total reserves under section 816(c)(2), Best Life qualifies as a life insurance company under section 816(a) and is to be allowed the claimed section 806 deductions.  This reading of section 816 conforms with the recent opinion of the Tax Court and with the opinion of the Court of Appeals for the Seventh Circuit that are directly on point and comports with the insurance industry's historical treatment of unpaid losses and reserves.

To reflect the foregoing,

Decision will be entered under Rule 155.