**HARCO HOLDINGS, INCORPORATED, and subsidiaries, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

**No. 91–1387.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 5, 1991.

Decided July 24, 1992.

As Amended on Denial of Rehearing Nov. 9, 1992.

Glen H. Kanwit (argued), Richard Bromley, Michael R. Schlessinger, Hopkins & Sutter, Chicago, Ill., for plaintiff-appellant.

Fred Foreman, U.S. Atty., Crim. Div., Chicago, Ill., Gary R. Allen, David I. Pincus, Robert W. Metzler (argued), Gerald C. Miller, Dept. of Justice, Tax Div., Appellate Section, Washington, D.C., for defendant-appellee.

Before CUDAHY, POSNER and COFFEY, Circuit Judges.

CUDAHY, Circuit Judge.

Life insurance companies receive favorable treatment under the Internal Revenue Code. To qualify for such favorable treatment, an insurance company must meet statutory criteria that measure how much of the company's business is life insurance. In 1978, the tax year in question, the qualification test was codified at 26 U.S.C. § 801 (1978 Supp.).[1] We are called upon to interpret a small portion of the statute and to decide whether accrued unpaid losses should be taken into account when determining whether an insurance company is a life insurance company.

## I.

Harco Holdings, Inc. (Harco[2]) owns a subsidiary, Association Life Insurance Company. In 1978 Association Life was in the business of writing life insurance and accident and health insurance. When preparing tax returns for 1978, Harco originally figured that Association Life was not a life insurance company, and paid taxes accordingly. Later, Harco decided that it had made a mistake: Association Life was a life insurance company in 1978, and the IRS owes Harco a refund of $790,794.

The facts are simple and not in dispute, but the complexity of the legal issue makes this a hard case, and somewhat difficult to describe.[3] First, we must define some insurance industry terms and describe some accounting conventions. States require in-

---

1. Section 801 has since been amended and renumbered. It may now be found at 26 U.S.C. § 816 (1988).

2. We will avoid the customary appellation for opponents of the IRS, "Taxpayer." Like referring to a defendant as "Criminal," it assumes the conclusion.

3. The difficulty of the issue makes us particularly aware of the excellence of the briefs presented by both parties. Not often do litigants manage to present complex arguments so intelligibly and succinctly.

surance companies to maintain defined levels of solvency to assure the payment of future claims. To facilitate state regulation, insurance companies must report their anticipated liability for claims on a standard Annual Statement promulgated by the National Association of Insurance Commissioners (NAIC). The Annual Statement divides such obligations into two categories: "reserves" and "liabilities." Reserves, according to the NAIC, measure claims for which the insurer will become liable in the future. Liabilities, on the other hand, correspond to claims for which the insurer is liable now. The shorthand term for the distinction between current and future obligations is "accrual": liabilities are accrued claims, reserves are unaccrued claims.[4]

The term we must construe is "unpaid losses." Generally speaking (a qualification that will become important), an unpaid loss is an insurer's estimate of its liability for claims arising out of injuries that have already occurred. Unpaid losses in this general sense do not fit neatly into the categories already described. Some unpaid losses are accrued, others are not. To give a concrete example, imagine someone with health insurance who has been seriously injured in a car crash: the medical expenses she has incurred in the emergency room are considered to be accrued, for she may claim reimbursement at any time; the medical expenses that she will incur in re-

habilitation are unaccrued, however. Although the insurance company may estimate what those future expenses will be, it need not pay for them until she actually receives treatment.

Now we turn to the statute. Section 801 has been around, in one form or another, since 1921. In 1921, the statutory test worked as follows: an insurance company was a life insurance company if more than half of its total reserves were life insurance reserves. Revenue Act of 1921, ch. 136, 42 Stat. 227 § 242. This measurement is often referred to as the "reserve ratio." The statute was somewhat flawed, however, in that none of the key terms was defined. In 1942, Congress amended the test for identifying life insurance companies; these amendments are the crucial ones for our purposes. The Revenue Act of 1942 provided a definition for "life insurance reserves," see § 801(b), added "unpaid losses on noncancellable life, health, or accident policies" to "life insurance reserves" in the numerator of the reserve ratio, see § 801(a)(2), and provided a definition for "total reserves" (the denominator of the reserve ratio) that includes "unpaid losses," see § 801(c). Revenue Act of 1942, Pub.L. No. 77–753, 56 Stat. 798 § 163(a) (1942 Act). We present a simplified schematic of the reserve ratio here and reprint the relevant portions of the statute in the margin:[5]

---

**4.** We should note that this use of the term "accrual" does not conform to generally accepted accounting principles.

For a more erudite description of insurance reserves, see *Central National Life Ins. Co. of Omaha v. United States,* 216 Ct.Cl. 290, 574 F.2d 1067 1978, 1 U.S.T.C. (CCH) ¶ 9378 at 83,984 (1978).

**5.** § 801. **Definition of life insurance company**
(a) **Life insurance company defined**
For purposes of this subtitle, the term "life insurance company" means an insurance company which is engaged in the business of issuing life insurance and annuity contracts (either separately or combined with health and accident insurance), or noncancellable contracts of health and accident insurance, if—
(1) its life insurance reserves (as defined in subsection (b)), plus
(2) unearned premiums, and unpaid losses (whether or not ascertained), on noncancella-

ble life, health, or accident policies not included in life insurance reserves,
comprise more than 50 percent of its total reserves (as defined in subsection (c)).
(b) **Life insurance reserves defined**
(1) **In general**
For purposes of this part, the term "life insurance reserves" means amounts—
(A) which are computed or estimated on the basis of recognized mortality or morbidity tables and assumed rates of interests [sic], and
(B) which are set aside to mature or liquidate, either by payment or reinsurance, future unaccrued claims arising from life insurance, annuity, and noncancellable health and accident insurance contracts (including life insurance or annuity contracts combined with noncancellable health and accident insurance) involving, at the time with respect to which the reserve is computed, life, health, or accident contingencies.
(2) **Reserves must be required by law**

life insurance reserves +

unpaid losses on noncancelable

life, health, or accident policies

---

life insurance reserves +

unpaid losses +

all other reserves

Harco claims that when the statute refers to "unpaid losses," it means only those unpaid losses that are reserves in the NAIC sense. In other words, "unpaid losses" means unaccrued unpaid losses.[6] Under this reading, the definition of total reserves is the same both before and after the 1942 amendments. The IRS, on the other hand, says that "unpaid losses" means *all* unpaid losses, both accrued and unaccrued.

The dispute is significant because in 1978 Association Life reported approximately $4 million of accrued unpaid losses on its cancelable accident and health insurance policies. If Association Life's accrued unpaid losses are included in its "total reserves," then its life insurance reserves were less than half of its total reserves. If accrued unpaid losses are not included, however, Association Life satisfied the reserve ratio test, was a life insurance company in 1978 and is entitled to a refund. On cross-motions for summary judgment, the district court gave judgment for the IRS, 754 F.Supp. 130 (N.D.Ill.1990). We reverse and remand for calculation of Harco's refund.

## II.

### A. *"Plain" Language*

■ We begin with the language of the statute. The IRS makes a common-sense argument: if the statute says "unpaid loss-

es," it means *all* unpaid losses, both accrued and unaccrued. Although this plain language argument has appeal, we cannot stop here. First, the plain language rule does not apply to parts of sentences. *First Chicago Corp. v. Commissioner*, 842 F.2d 180, 183 (7th Cir.1988). Second, context is important to explain the meaning of otherwise intelligible terms, especially when referring to a complicated and highly technical portion of the tax code. *Id.* Finally, the Court of Claims, which has somewhat more experience with this statute than we, urges caution when construing the terms of section 801: "It is well established that the technical provisions of section 801 (and its predecessors) were couched by Congress in language peculiar to the insurance industry and therefore intended to have the meaning generally attributed thereto by the experts." *Alinco Life Ins. Co. v. United States*, 178 Ct.Cl. 813, 373 F.2d 336, 352 (1967).

■ Harco makes a series of interrelated arguments about the language of the statute. First, the structure of the statute indicates that "unpaid losses" are an element of a larger class of items called "reserves." This is clearly correct. "Unpaid losses" are part of the definition of "total reserves" in section 801(c), and the term is followed by a clause that reads "and all other insurance reserves required by law," § 801(c)(3). Further, "unpaid losses" are added to "life insurance reserves" in section 801(a) and the sum must "comprise more than 50 percent of total reserves." § 801(a). This use of "comprise" to mean "constitute" is not generally favored, *see* Theodore M. Bernstein, *The Careful Writer* 113 (Macmillan 1977), but its use here means that all of the items found in the numerator of the ratio, including "unpaid

. . . .

**(c) Total reserves defined**
    For purposes of subsection (a), the term "total reserves" means—
    (1) life insurance reserves,
    (2) unearned premiums, and unpaid losses (whether or not ascertained), not included in life insurance reserves, and
    (3) all other insurance reserves required by law.

. . . .

26 U.S.C. § 801 (1978 Supp.).

**6.** The outcome of this case turns on whether the term "unpaid losses" has the same meaning in the statute as it has in general use. To reduce confusion, we use quotation marks whenever we refer to the term in the statute and omit them when referring to the term in general use.

losses ... on noncancellable life, health, or accident policies" are also found in "total reserves." Again, "unpaid losses" are a component of "reserves."

Before 1942, Harco continues, the term "reserves" had acquired a precise meaning that included unaccrued unpaid losses and excluded accrued unpaid losses (which were "liabilities"). In a number of cases dealing with the deductibility of "reserves," courts had established that such reserves included only "future, unaccrued and contingent amounts." *Commissioner v. Monarch Life Ins. Co.*, 114 F.2d 314, 325 (1st Cir. 1940) (emphasis added) (citing, *inter alia, Helvering v. Inter–Mountain Life Ins. Co.*, 294 U.S. 686, 55 S.Ct. 572, 79 L.Ed. 1227 (1935)). A contemporaneous Treasury regulation contained the same definition: reserves included "future unaccrued and contingent claims" but not "reserves required to be maintained to provide for the ordinary running expenses of a business ... such as ... accrued but unsettled policy claims." Treas.Reg. 86 (1934 Code), § 203(a)(2)–1. Applying this principle to accident and health insurance, the Supreme Court held that unpaid losses were reserves so long as they were not accrued. *Helvering v. Oregon Mutual Life Ins. Co.*, 311 U.S. 267, 271–72, 61 S.Ct. 207, 209, 85 L.Ed. 180 (1940) (reserves for future payments to presently disabled policy holders are "true reserves in the insurance sense"); *see also Monarch Life*, 114 F.2d at 322 (discussing NAIC "Reserve for Unpaid and Unresisted Claims"). Further, although deductible reserves and the reserves required for qualification as a life insurance company under the predecessor to section 801 were not identical, *Commissioner v. Swift & Co. Employes [sic] Benefit Ass'n*, 151 F.2d 625, 630 (7th Cir.1945) (unlike deductible reserves, qualification reserves

need not be required by law); *National Protective Ins. Co. v. Commissioner*, 128 F.2d 948, 951 (8th Cir.) (same), *cert. denied*, 317 U.S. 655, 63 S.Ct. 51, 87 L.Ed. 527 (1942); *Monarch Life*, 114 F.2d at 325 (deductible reserves need not be life insurance reserves), there seems to be no question that the underlying concept of "reserves" was the same in both provisions. Certainly the IRS thought so. Treas.Reg. 86 (1934 Code), § 201(a)–1 (deductible reserves and qualification reserves are the same).

Harco further supports its argument that only unaccrued unpaid losses are reserves by reference to the NAIC Annual Statement. As noted above, the NAIC differentiates between unaccrued and accrued unpaid losses—relegating the former to "reserves" and the latter to "liabilities." See NAIC Annual Statement for the Year 1978 and *compare* Exhibit 11, "Liability End of Current Year" n. † *with* Exhibit 9, "Aggregate Reserve for Health and Accident Policies" n. * *. Since Congress itself has mandated some measure of deference to NAIC accounting principles, *see* 26 U.S.C. § 818 (1978 Supp.),[7] the Annual Statement is persuasive authority that "reserves" has a definite meaning and that accrued unpaid losses are not included.

To summarize, Harco argues that "unpaid losses" are "reserves" and that "reserves" do not include accrued unpaid losses. Therefore, as used in the statute, "unpaid losses" do not include accrued unpaid losses.

The IRS concedes that "unpaid losses" are reserves. Nevertheless, it argues that the addition of "unpaid losses" in 1942 effectively changed the meaning of "reserves." First, the Service asserts that "unpaid losses" is a term borrowed from

7. § 818. **Accounting provisions**
(a) **Method of Accounting**
All computations entering into the determination of the taxes imposed by this part shall be made—
(1) under an accrual method of accounting, or
(2) to the extent permitted under regulations prescribed by the Secretary, under a combination of an accrual method of accounting with any other method permitted by this

chapter (other than the cash receipts and disbursements method).
Except as provided in the preceding sentence, all such computations shall be made in a manner consistent with the manner required for purposes of the annual statement approved by the National Association of Insurance Commissioners.
26 U.S.C. § 818(a) (1978 Supp.) (now amended and recodified at 26 U.S.C. § 811(a) (1988)).

statutes governing the taxation of property and casualty insurers. *See* 1921 Act § 246(b)(6). In that context, the case law establishes that "unpaid losses" refers to both the accrued and unaccrued varieties. *See Pacific Employers Ins. Co. v. Commissioner,* 33 B.T.A. 501, 502–04 (1935), aff'd, 89 F.2d 186 (9th Cir.1937); *Retailers Fire Ins. Co. v. Commissioner,* 3 B.T.A. 1186, 1193 (1926). Second, the Service argues that the term "reserves" should be read with reference to the qualifier that follows it, "required by law." § 801(c)(3). Some states, according to the Service, require insurers to set aside funds to cover accrued unpaid losses. These funds, the Service says, are the "reserves required by law" to which the statute refers.

Neither argument persuades us. First, at least as used in the numerator of the ratio, "unpaid losses" refers explicitly to "life, health, or accident policies," not to property and casualty insurance. § 801(a)(2). We find it difficult to believe that Congress would ignore the accident and health insurance meaning of a technical term when it was referring to accident and health insurance. And if Congress used the accident and health term in the numerator, it is unlikely that it used a different sense of the term in the substantially identical provision for "unpaid losses" in the denominator. § 801(c)(2).

Second, while it is clear that unpaid losses are reserves, it is not so clear that they are "reserves required by law." Section 801(b)(2) explicitly requires that life insurance reserves be required by law, *Commissioner v. Standard Life & Accident Ins. Co.,* 433 U.S. 148, 157, 97 S.Ct. 2523, 2528, 53 L.Ed.2d 653 (1977), but there is no equivalent requirement that reserves for unpaid losses be required by law. *See* §§ 801(a)(2) & 801(c)(2). Even if we agreed that reserves for unpaid losses must be required by law to be counted,[8] the converse is not necessarily true—all funds that must be set aside by law are not necessarily "reserves" within the meaning of the statute. *McCoach v. Insurance Co. of North America,* 244 U.S. 585, 589, 37 S.Ct. 709, 711, 61

L.Ed. 1333 (1917); Rev.Rul. 70–190, 1970–1 C.B. 150, 151 (*McCoach* still applies; not all reserves required by law are "reserves"); *but see United States v. Consumer Life Insurance Co.,* 430 U.S. 725, 752–53 n. 38, 97 S.Ct. 1440, 1454 n. 38, 52 L.Ed.2d 4 (suggesting that *McCoach* no longer applies). Finally, the evidence that state laws require reserves for accrued unpaid losses is thin. The Service has pointed to two state statutes that arguably require insurers to reserve for accrued unpaid losses. But the first, an Illinois statute, applies only to property and casualty insurers, not to life insurers. Ill.Rev.Stat.Ann. ch. 73, §§ 616, 990 (1991). The second, a Michigan statute, does seem to require all insurers to maintain reserves for accrued unpaid losses. Mich.Comp.Laws § 500.810 (1978). On the other hand, Wisconsin, where Association Life is chartered, has no equivalent provision (or at least the Government has cited none to us). Given the lack of uniformity, state law is not a plausible source of authority for the proposition that accrued unpaid losses are "reserves required by law."

The Service also argues that we should ignore the NAIC in deciding this appeal. To understand the Service's argument, however, we must first flesh out the facts. A large portion of the accrued unpaid losses at issue here are for "incurred but not reported" (IBNR) amounts. As the name suggests, IBNR losses refer to claims that will be made by policyholders who have not yet reported their injuries. Quite understandably, the amount of IBNR unpaid losses is never more than an estimate. The further division of IBNR unpaid losses into accrued and unaccrued portions may be even more arbitrary.

The Service notes that the NAIC's treatment of IBNR amounts (permitting some to be treated as accrued items) violates "well-established tax rules of accrual accounting." Gov't Br. at 37 n. 30. Therefore, since section 818(a) forbids the use of NAIC principles that contravene accrual accounting rules, *Colonial American Life Ins. Co. v. Commissioner,* 491 U.S. 244,

---

**8.** We should emphasize that this particular ques-    tion is not before us.

254, 109 S.Ct. 2408, 2415, 105 L.Ed.2d 199 (1989), we should ignore NAIC's accounting practices in this area. But the issue before us is the treatment of unpaid losses, not the treatment of IBNR losses (although the categories overlap), and to the extent that the NAIC treats unaccrued items as reserves and accrued items as liabilities, the Service can hardly argue that NAIC practice violates accrual accounting rules.[9]

Although we reject the Service's argument, the amount of deference we should give to the NAIC's definition of "reserves" and to its treatment of unpaid losses is not clear. In 1977 the Supreme Court deferred to the NAIC's treatment of unpaid premiums (an element of reserves in section 801 and also in 26 U.S.C. § 809 (1978 Supp.)) when calculating an insurer's gross premium income, assets and reserves. *Standard Life*, 433 U.S. at 151, 162–63, 97 S.Ct. at 2525, 2531. Since the NAIC's treatment did not violate accrual accounting rules, and the IRS had promulgated no regulations on point, the Court held that NAIC procedures were the mandatory solution to what was "essentially an accounting problem." *Id.* at 158, 97 S.Ct. at 2529. More recently, however, the Court has opined that NAIC procedures deserve no deference when a "core policy determination" is involved. *Colonial Life*, 491 U.S. at 255, 109 S.Ct. at 2415. The most natural read-

ing of these cases is to defer to the NAIC on "accounting problems" and to ignore the NAIC on "core policy determinations." But it is difficult to tell which is which; for the issue in *Colonial Life* was whether a particular category of expense could be deducted in full or had to be amortized, which looks like an accounting problem to us. *Id.*[10] Given the difficulties of interpretation, we steer a middle course. We do not accept the NAIC's treatment of unpaid losses as the definitive answer to the question before us. Nevertheless, absent indications to the contrary, we think it likely that Congress meant to enact a taxation scheme that defines reserves and treats unpaid losses as the NAIC does. The Annual Statement may not be definitive, but it is an authoritative interpretive guide to the meaning of the statute.[11]

Having rejected all of the Service's arguments against Harco's interpretation of the statute, we note that there is one more argument the IRS could make about the language of the statute, but does not. We will raise it here anyway, because it is relevant to a later discussion of a potentially dispositive Treasury regulation. In 1959, Congress added a parenthetical expression, "(whether or not ascertained)" to follow "unpaid losses." Life Insurance Company Tax Act of 1959, Pub.L. No. 86–

9. In the course of making the argument described in the text, the Service has tried to slip in another argument that IBNR losses should never be considered to be "accrued" under general tax principles. *See United States v. General Dynamics Corp.*, 481 U.S. 239, 246–47, 107 S.Ct. 1732, 1738, 95 L.Ed.2d 226 (1987). If we accepted this position, we would not have to decide whether accrued unpaid losses are counted in total reserves, for Association Life's IBNR losses would all be counted as unaccrued unpaid losses anyway. But the Service did not raise this argument in the court below. Further, the Service audited Association Life's figures and stipulated that the IBNR losses in question here were indeed accrued. Thus the IRS has waived the argument that IBNR losses should be treated differently from other unpaid losses. We also note that the argument is not clearly right: the passage cited by the IRS states that accrual rules are different for insurance companies. *Id.*

10. We note that the NAIC practice in question in *Colonial Life* also violated accrual accounting rules, which provides an alternate basis for the

Court's holding. 491 U.S. at 254, 109 S.Ct. at 2415.

11. Following the tax year in question, Congress further muddied the waters with regard to the deference owing to NAIC practices. The Deficit Reduction Act of 1984, Pub.L. No. 98–369, sec. 211, 98 Stat. 720, 740, amended the last sentence of section 818(a), "Except as provided in the preceding sentence, all such computations shall be made in a manner consistent with the manner required for purposes of the annual statements approved by the [NAIC]," to read "To the extent not inconsistent with the preceding sentence *or any other provision of this part,* all such computations shall be made in a manner consistent...." *Anchor National Life Ins. Co. v. Commissioner*, 93 T.C. 382, 415 n. 20 (1989) (emphasis added by the court). This amendment effectively overruled *Standard Life* and "reinforc[ed] the primacy of the Federal tax rules." *Id.* at 420–21 n. 27. The amendment does not, however, help us to understand what Federal tax rules are.

69, 73 Stat. 112, § 2 (1959 Act). Thus the language of the statute contemplates that "ascertained" unpaid losses will be counted. This language poses a problem for Harco; for if a loss has not accrued, how can it be "ascertained"? If "ascertained" losses are accrued, then "unpaid losses (whether or not ascertained)" must include accrued unpaid losses.

There are two responses to this line of argument. First, according to Harco (and the IRS does not dispute the assertion), the difference between unaccrued unpaid losses and other types of reserves is that estimates of unaccrued unpaid losses are made on a case-by-case basis—someone from the insurance company examines the file and estimates the company's future liability to the policy holder based on the nature of her injuries. This process could be characterized as "ascertaining" an unaccrued unpaid loss. Conversely, an unascertained unpaid loss could be one that is incurred but not reported (IBNR). Since the injury has not been reported, the insurer cannot ascertain its potential liability by looking at the case. All this may sound like speculation, but it brings us to response number two. The IRS does not make the argument because it concedes that Congress added the parenthetical solely to clarify that IBNR amounts should be included in unpaid losses. Gov't Br. at 13 n. 7 & 32 n. 27 (citing S.Rep. No. 291, 86th Cong., 1st Sess. (1959), *reprinted at* 1959-2 C.B. 800, 810; and H.R.Rep. No. 34, 86th Cong., 1st Sess. (1959), *reprinted at* 1959-2 C.B. 751, 757). In other words, the legislative history firmly supports the idea that the word "ascertained" merely distinguishes between IBNR losses and non-IBNR losses. There is no indication that "ascertained" unpaid

losses are necessarily accrued losses, nor is there any indication that Congress had the distinction between accrued and unaccrued in mind.

In sum, the Government's argument that "unpaid losses" clearly includes accrued unpaid losses is not persuasive. Indeed, the structure of the statute, when combined with a definition that we do understand, indicates precisely the opposite: since the "unpaid losses" to which the statute refers are "reserves," Congress probably used the phrase "unpaid losses" to refer only to unaccrued unpaid losses.

## B. *Treasury Regulation*

■ The IRS persuaded the district court that even if the language of the statute does not compel the result the Service favors, it has promulgated a regulation that does. Treasury Regulation 1.801–3(g) provides that " 'unpaid losses (whether or not ascertained)' means a reasonable estimate of the amount of the losses ... [r]eported and ascertained by the end of the taxable year but where the amount of the loss has not been paid by the end of the taxable year...." (Again, we present the full text in the margin.[12]) The district court reasoned that, by definition, a claim that has been "ascertained" and not paid is an accrued unpaid loss. Order at 7 (Dec. 21, 1990). But this is exactly the argument that we have just rejected in reference to the statute itself. A claim that has been "ascertained" has *not* necessarily accrued. Moreover, regulation 1.801–3(g) was promulgated in 1960, one year after Congress added the parenthetical expression "(whether or not ascertained)," to the statute itself. The implication is that the quali-

---

**12.** § 1.801–3 **Definitions.**
... this section defines the following terms, which are to be used in determining if a taxpayer is a life insurance company (as defined in section 801(a) and paragraph (b) of this section):
....
(g) **Unpaid losses (whether or not ascertained).** The term "unpaid losses (whether or not ascertained)" means a reasonable estimate of the amount of the losses (based upon the facts in each case and the company's experience with similar cases)—

(1) Reported and ascertained by the end of the taxable year but where the amount of the loss has not been paid by the end of the taxable year,
(2) Reported by the end of the taxable year but where the amount thereof has not been either ascertained or paid by the end of the taxable year, or
(3) Which have occurred by the end of the taxable year but which have not been reported or paid by the end of the taxable year.
26 C.F.R. § 1.801–3 (1978).

fier "ascertained" has the same meaning and purpose in the regulation as in the statute: "ascertained" signals the difference between IBNR and non-IBNR losses, not the difference between accrued and unaccrued losses.

## C. Administrative Interpretation

■ There is sufficient ambiguity in the statute and the regulations that we might defer to the Service's *interpretation* anyway. *See, e.g., First National Bank v. Comptroller of Currency,* 956 F.2d 1360, 1365 (7th Cir.1992). But such deference applies only to "reasoned and consistent" agency positions; it does not apply to "agency litigating positions that are wholly unsupported by regulations, rulings, or administrative practice." *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 212, 109 S.Ct. 468, 473, 102 L.Ed.2d 493 (1988).

■ What we know of agency practice is that the Service's decision to interpret "unpaid losses" to include accrued unpaid losses is significantly more recent than regulation 1.801–3(g). In 1977 (seventeen years after regulation 1.801–3(g) was promulgated), the Commissioner issued a private letter ruling that "unpaid losses" in section 801 do *not* include accrued items. Priv. Ltr.Rul. 7,735,008 (May 31, 1977). Not until December 1990, after this litigation began, did the Service issue another private letter ruling rescinding the first. Priv. Ltr.Rul. 9,112,011 (Dec. 20, 1990).[13]

The Service has issued one public ruling on the inclusion of accrued unpaid losses in section 801. But that ruling is grossly inconsistent with the position the Service takes before us. In Revenue Ruling 72–115, 1972–1 C.B. 200, the Secretary determined that accrued unpaid losses on *life insurance* contracts are *not* included in the term "unpaid losses" in section 801(c)(2). The IRS appears to concede that "unpaid losses" in section 801(c)(2) cannot mean different things depending on the kind of in-

surance involved. But it argues that its present position is consistent with the ruling, because section 801(c)(2) simply does not apply to life insurance, period.

Although we are unable to discern any basis in the statute or the legislative history for the Service's position, we recognize that the Service has consistently held that sections 801(a)(2) and 801(c)(2) have no application to straight life insurance. Revenue Ruling 72–115; 26 C.F.R. § 1.801–3(c) (1991) (section 801(a)(2) does not apply to straight life insurance); *see also Alinco,* 373 F.2d at 354 (same). Since section 801(a)(2) refers to life insurance explicitly, however, we are somewhat puzzled by the Service's present position that "unpaid losses," a term found in the same subsection, has a plain meaning.

Putting these observations aside, even if we agree that section 801(c)(2) does not cover unpaid losses on life insurance and can thereby reconcile Revenue Ruling 72–115 with the Service's current position, the reconciliation makes no sense. For if we accept the position of the IRS, then the reserve ratio test would not measure accrued unpaid losses on life insurance but would measure accrued unpaid losses on accident and health insurance. The Service is unable to explain *why* Congress would want to treat accrued unpaid losses on the two kinds of insurance differently. Indeed, the Service concedes that, if anything, Congress thought that accident and health insurance (at least when noncancelable) should be treated just like life insurance. Gov't Br. at 28 (citing S.Rep. No. 1631, 77th Cong., 2d Sess. 144 (1942), *reprinted at* 1942–2 C.B. 504, 611–12 (1942 Senate Report); and H.R.Rep. No. 2333, 77th Cong., 2d Sess. 109 (1942), *reprinted at* 1942–2 C.B. 372, 453–54 (1942 House Report)).

In sum, the Service's interpretation of section 801 and regulation 1.801–3(g) is not only new and unsupported by agency practice or rulings, it is internally inconsistent.

**13.** Private letter rulings are not precedent. 26 U.S.C. § 6110(j)(3) (1988); *David R. Webb Co. v. Commissioner,* 708 F.2d 1254, 1257 n. 1 (7th Cir.1983). We cite them here only as evidence of administrative practice, not as authoritative interpretations of section 801.

The Service's position deserves no deference.

## D. Precedent

In 1967, the Ninth Circuit reached the precise question before us today and opined that "unpaid losses" in section 801 does include accrued unpaid losses. *United States v. Occidental Life Ins. Co.*, 385 F.2d 1, 6 (9th Cir.1967). We are not bound by the holdings of our sister circuits, and, as will become clear, the court's discussion is not a holding of the case, but it may be persuasive authority and it deserves discussion.

The question before the court in *Occidental* was whether "unpaid losses" in section 806 of the Code included accrued unpaid losses. *See* 26 U.S.C. § 806 (1954) (*repealed*, 1959 Act § 2). The parties stipulated that "unpaid losses" had the same meaning in sections 801 and 806, and the court construed section 801 only as support for its ultimate conclusion. 385 F.2d at 5. Analyzing section 801, the court observed that most unaccrued unpaid losses would fit within the category of "life insurance reserves" defined in 801(b) and included in 801(a)(1) and 801(c)(1). *Id.* at 6. Since Congress added sections 801(a)(2) and 801(c)(2), which also refer to "unpaid losses," and those sections must be meaningful, "unpaid losses" must include *all* unpaid losses, accrued and unaccrued.

The court's argument is not persuasive mainly because it rests on a false premise.[14] As noted above, unaccrued unpaid losses are generally not included in "life insurance reserves" because they are not "computed or estimated on the basis of recognized mortality or morbidity tables...." § 801(b).[15] Thus the provisions for "unpaid losses" need not be superfluous, even if they include only unaccrued unpaid losses.

With this observation in mind, the legislative history cited by the Ninth Circuit takes on a new significance. According to the Senate Report, the definition of "life insurance reserves" *"is substantially that contained for many years in the regulations...."* *Id.* at 6 n. 11 (quoting 1942 Senate Report at 145, 1942–2 C.B. at 612) (emphasis added by the court). Nonetheless, the new definition of "life insurance reserves" was also qualified by a new requirement that they be computed according to actuarial tables. 1942 Senate Report at 145, 1942–2 C.B. at 612. It seems reasonable to assume, then, that the provisions for "unpaid losses" were designed to pick up those items that were included in the old definition of reserves but were excluded by the new definition of "life insurance reserves"—unaccrued unpaid losses.

To summarize, sections 801(a)(2) and 801(c)(2) are not superfluous, even if they include only unaccrued unpaid losses. Further, the legislative history suggests that sections 801(a)(2) and 801(c)(2) were added precisely because they do include unaccrued unpaid losses. Obviously, these observations do not establish that accrued unpaid losses are *not* included, but they do wipe out *Occidental's* reason for holding that they are included.

Although we are not persuaded by the Ninth Circuit's reasoning, the court did hold that "unpaid losses" in section 806 includes accrued items. Further, the Court of Claims agrees with the holding in *Occidental*. *Prudential Ins. Co. v. United States*, 162 Ct.Cl. 55, 319 F.2d 161, 165–66 (1963). We do not find the reasoning in *Prudential* persuasive either, since it relies on the plain language argument we have already rejected. Nonetheless, we need not reject *Occidental Life* or *Prudential*

**14.** The argument also has a logical flaw. If "unpaid losses" means all unpaid losses, and "life insurance reserves" includes unaccrued unpaid losses, then the statute counts unaccrued unpaid losses twice. Thus the court avoided making the provisions for "unpaid losses" superfluous by making them redundant. The reasoning would better support the conclusion that

"unpaid losses" means *only* accrued unpaid losses, a position that even the IRS does not espouse.

**15.** We have simplified the truth here somewhat. Some unaccrued unpaid losses, particularly additional reserves to cover the expected costs of

out of hand.[16] Instead, we note that identical language in sections 806 and 801 need not have the same meaning. Section 806 governs a tax deduction, while section 801 is a definitional provision. Deductions are a matter of legislative grace, to be construed strictly against taxpayers. Definitional provisions, like section 801, get a somewhat more liberal reading. *United States v. Consumer Life Ins. Co.*, 430 U.S. 725, 752–53 n. 38, 97 S.Ct. 1440, 1454 n. 38, 52 L.Ed.2d 4 (1977) (restrictive interpretation given to tax deductions should not be applied to section 801); *Swift*, 151 F.2d at 628–29 (rejecting argument that the predecessor statutes to sections 801 and 806 should be construed identically). The Service urges us to cast off this "old maxim[ ]" of statutory construction" because "the language of the statute is clear, and the legislative history and the administrative regulations reinforce that language." Gov't Br. at 40 n. 32. But as we have seen, the language of the statute, when read as a whole, favors Harco, and regulation 1.801–3(g) is not to the contrary.[17] We turn now to the legislative history.

### E. *Legislative History*

The parties have argued extensively about the scanty legislative history of section 801. The IRS notes a passage in the House Report to the 1942 Act that refers to "total" unpaid losses. 1942 House Report at 109, 1942–2 C.B. at 454. Harco counters that the authors used "total" only to contrast the treatment of unpaid losses with the pro rata treatment of unearned premiums. Neither position is clearly right.[18] As discussed above, the parties have also argued about the various definitions of "unpaid losses" and "reserves" that Congress may have had in mind. On the whole, Harco wins the latter debate: the best reading of the statute is that "unpaid losses" refers only to unaccrued unpaid losses. We pause here, however, to make an observation that is not directly linked to the language of the statute.

The legislative history of the 1942 Act evinces a clear intent to expand the definition of life insurance company so that insurers who offered noncancelable accident and health insurance could qualify for the same favorable tax treatment as life insurance companies. 1942 Senate Report at 144–45, 1942–2 C.B. at 611–12.[19] If accrued unpaid losses are included in "total reserves," however, some insurance companies that qualified as life insurers under the old statute would no longer qualify as life insurers under the new statute. Association Life is the perfect example of this phenomenon. Applying the old test, Association Life's total reserves would not include its accrued unpaid losses on its cancelable accident and health policies. Its life insurance reserves would then constitute more than half of the total, and Association Life would be a life insurance company. If the 1942 Act changed the definition of "total reserves" to include accrued unpaid losses, Association Life would no longer be a life insurance company after the amendments. But the 1942 Act was intended to benefit insurers who wrote noncancelable accident and health insurance. It was not intended to penalize life insurers who did not. *Alinco*, 373 F.2d at 348. The only reading of "unpaid losses" that is consistent with the intent to expand the availabil-

---

renewing noncancelable policies, are calculated on the basis of mortality tables.

**16.** Since Congress has repealed section 806, 1959 Act § 2, it would not matter much if we did just disagree.

**17.** We also rather doubt that the IRS *really* wants us to cast off the old maxim that deductions are to be construed strictly against the taxpayer.

**18.** In full, the sentence reads: "The pro rata unearned premiums and the total unpaid losses on noncancelable health and accident policies are added to life insurance reserves in determining whether a company is to be considered a life insurance company."

**19.** The relevant passage also explains the reason for the change:

> Since noncancelable contracts of health and accident insurance require the accumulation of substantial reserves against increased future risks, the writing of such insurance is analogous to life insurance and the definition has been changed to permit such companies to be taxed as life insurance companies.

ity of favorable tax treatment is the reading suggested by the Senate Report: section 801 is substantially similar to the old test, and accrued unpaid losses are not counted. 1942 Senate Report at 144–45, 1942–2 C.B. at 611–12.

### III.

The IRS has made a strong argument that we should read "unpaid losses" in section 801 in accordance with its apparently plain meaning—*all* unpaid losses. But the structure of the statute suggests a more limited reading of the term. Moreover, the position of the Service is not supported by its regulations or administrative practice and is inconsistent with its earlier ruling and with the intent of Congress. "Unpaid losses" in section 801 does not include accrued unpaid losses. Accordingly, the decision of the district court is REVERSED and the case is REMANDED for calculation of Harco's refund.