Marvin L. BARMES and Barbara J. Barmes, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 00–3874.

United States Court of Appeals, Seventh Circuit.

Submitted June 18, 2001.[*]

Decided June 19, 2001.

---

* After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before MANION, ROVNER, and EVANS, Circuit Judges.

### ORDER

The Commissioner of Internal Revenue disallowed a depreciation deduction on two automobiles and a casualty loss deduction[1] for the repair of a pond that Marvin and Barbara Barmes claimed on their 1994 income tax return and penalized them for negligently underpaying their tax. The Tax Court affirmed the Commissioner, and the Barmeses brought this appeal. We affirm.

During 1994 the Barmeses operated Barbara's Gift Shop and Barmes Wholesale, principally from commercial space in Vincennes, Indiana. Though they owned a home in rural Frichton, about seven miles away, the Barmeses spent approximately three or four nights a week at an apartment located above the store. They also used a farm house on the Frichton property, which was separate from their home, for business meetings and record storage. The Barmeses both worked seven days per week on their business. Mr. Barmes estimated that he spent 10% of his time working at the Frichton farm house, and Mrs. Barmes occasionally did some paperwork there. In 1994 the Barmeses purchased two new cars, a Corvette and a Cadillac, which they used to travel between the Frichton property and the store in Vincennes.

A heavy snowfall in the winter of 1990–91 damaged eight to 10 trees surrounding a pond at the Frichton property, causing the trees or limbs to fall into the pond through 1994. Until 1992 the Barmeses caught and ate fish from the pond; however, at some point between 1992 and 1994 the fish in the pond died off. Mr. Barmes noticed in late 1993 that the 70–year–old pond had become stagnant and polluted. In the summer of 1994, the Barmeses drained the pond and hired Shepherd Construction to clean it. Shepard removed trees from in and around the pond, dredged approximately four or five feet of silt, reshaped the pond and rebuilt the surrounding levee.

On their 1994 joint return, the Barmeses reported net business income of $859,655 and adjusted gross income of $843,560. The Barmeses claimed a depreciation deduction of $2,960 for each of their new cars, the limit in 1994, asserting that both were used the majority of the time for business. However, the Barmeses did not maintain a log or any other con-

---

1.  On their joint tax return, the Barmeses deducted the cost of restoring the pond as a business expense on Schedule C. However, in the Tax Court the Barmeses changed their argument to assert that the restoration expenses qualified for a casualty deduction.

temporaneous record of the business use of the vehicles. The Barmeses also claimed the $27,187 cost of restoring the pond as a business expense. In April 1998 the Commissioner issued a notice of deficiency, disallowing the depreciation and pond restoration deductions and assessing a negligence penalty. The Barmeses contested the Commissioner's notice in the Tax Court, where they argued that the pond restoration expenses qualified for a casualty loss deduction rather than a business deduction. The Tax Court upheld the Commissioner's notice of deficiency.

■ The Barmeses first argue here that the Tax Court erred in disallowing the depreciation deduction for their two automobiles. The Barmeses argue that the cars were used solely for business purposes and are therefore depreciable under § 167 of the Internal Revenue Code, which allows as a deduction a "reasonable allowance for the exhaustion, wear and tear ... of property used in the trade or business." 26 U.S.C. § 167(a). As they did before the Tax Court, the Barmeses assert that the deduction was proper because they have two residences (the apartment at Vincennes and the house at Frichton) and two business offices (the store in Vincennes and the farm house in Frichton). Since, in their view, they were on call for the business 24 hours a day and used the cars to travel between the two offices, they argue that the cars were used for business purposes and not for non-deductible commuting from home to work. This argument fails.

■ Deductions provided in the Internal Revenue Code are matters of legislative grace, *Stinson Estate v. United States,* 214 F.3d 846, 848 (7th Cir.2000), and are strictly construed against the taxpayer, *Harco Holdings, Inc. v. United States,* 977 F.2d 1027, 1037 (7th Cir. 1992). Taxpayers bear the burden of proving that they are entitled to a deduction. *Hefti v. IRS,* 8 F.3d 1169, 1173–74 (7th Cir.1993). Under I.R.C. §§ 274(d)(4) and 280F(d)(4)(A)(i), each element of an automobile-related deduction, including a deduction for depreciation, must be substantiated either by adequate records maintained by the taxpayer or by sufficient evidence corroborating the taxpayer's own statement. *See also* 26 C.F.R. § 1.274–5T(b); *Yecheskel v. Comm'r,* 73 T.C.M. (CCH) 2075, 1997 WL 71694 (1997). In a case such as this, where the taxpayer has failed to maintain adequate records, IRS regulations require a taxpayer to establish each element of the deduction with a detailed personal statement corroborated by other evidence. 26 C.F.R. § 1.274–5T(c)(3). A taxpayer's own statement, standing alone, is not sufficient. *Berkley Mach. Works & Foundry Co. v. Comm'r,* 623 F.2d 898, 906–07 (4th Cir.1980). We review the district court's factual determinations, including whether the taxpayer has met the substantiation requirement of § 274, only for clear error. *See Yoon v. Comm'r,* 135 F.3d 1007, 1012 (5th Cir.1998); *see also L & C Springs Assoc. v. Comm'r,* 188 F.3d 866, 869 (7th Cir.1999).

■ The district court did not err in finding that the Barmeses' commute between Vincennes and Frichton was for primarily personal reasons. It is true, as the Barmeses argue, that expenses incurred in traveling between two places of business are generally deductible. *See Gosling v. Comm'r,* 77 T.C.M. (CCH), 1999 WL 259667 1951 (1999). However, the Barmeses did not meet their burden of proving that the commute between Vincennes and Frichton was anything other than commuting between home and work, which is not deductible. *Id.* When one of the taxpayer's offices is located in close proximity to his home, the question is

whether travel between the two was primarily motived by business reasons or to return "home" in the popular sense of the word. *Heape v. Commissioner*, 64 T.C.M. (CCH) 1307, 1992 WL 323611 (1992). Although the Barmeses testified that they traveled between Vincennes and Frichton to pick up cash for the business and occasionally hold meetings, no record was kept of how many trips were made between the two offices or what was done on each trip. Furthermore, the Frichton house is located on 17 acres of property and contains the pond, which Mr. Barmes testified was "beautiful" and had "pleasure to it." The Barmeses' testimony was vague, and the Tax Court could reasonably discount their claims of indifference regarding where they spent the night. Therefore, the Tax Court did not err in finding that the Barmeses' primary reason for the travel was personal.

■■■ The Barmeses also failed to adequately substantiate their entitlement to a depreciation deduction. First, they did not substantiate the cost of the vehicles with documentary evidence, such as a cancelled check. *See Yecheskel v. Comm'r*, 73 T.C.M. (CCH) 2075, 1997 WL 71694 (1997) (allowing depreciation deduction for automobile where cost was substantiated by cancelled check). Additionally, the Barmeses did not establish the respective percentages of personal and business use for the vehicles. Mr. Barmes admitted using an automobile for personal reasons, though he characterized it as "less than five percent of the time." He also admitted that he could not tell the court how his "vehicles were used last month"; he instead insisted that he was doing business wherever he was, even if it was a mall or restaurant. Mrs. Barmes similarly admitted using her car to go to the grocery and to doctor's appointments in addition to driving between Frichton and Vincennes.

Besides their self-serving statements, the only evidence presented by the Barmeses of business use of the automobiles was their daughter-in-law's testimony that she "recall[ed] the vehicles used was for business" and that Mr. Barmes was "120 percent business." This does not constitute evidence sufficient to support the amount of time the automobiles were used for business purposes, and the Tax Court did not err in denying the depreciation deduction for lack of substantiation.

■■■ The Barmeses also argue that the Tax Court erred in finding that they were not entitled to a deduction for the pond restoration expenses. Here, the Barmeses disagree with the Tax Court's conclusion that the damage caused to their pond was not a "casualty" and that no deduction was appropriate. Under the Internal Revenue Code, a taxpayer may deduct nonbusiness losses to property arising from "fire, storm, shipwreck, or other casualty, or from theft." 26 I.R.C. § 165(c)(3). In order to qualify as a casualty under § 165, however, a loss must be "due to sudden, unexpected, or unusual events as opposed to a gradually developed result, such as one that occurs through normal operation and deterioration." *Smith v. Comm'r*, 608 F.2d 321, 322 (8th Cir.1979). Damage caused gradually by natural forces, such as erosion, does not constitute a casualty. *See Bailey v. Comm'r*, 47 T.C.M. (CCH) 321, 1983 WL 14673 (1983) (noting that the Tax Court has consistently required taxpayers to establish that damage from shifting soil was caused in a sudden manner rather than as a result of gradual erosion).

The Tax Court's determination that the damage to the pond did not constitute a casualty was not clearly erroneous. Although some trees near the pond were damaged during a winter storm in 1990–91 and later fell into the pond, Mr. Barmes's testimony indicates that the pond did not

become stagnant or dead until the fall of 1993. Furthermore, Mr. Barmes conceded that he could not say for certain that the trees falling into the pond "were the exact cause of that pond dying," and that the pond was approximately 70 years old with eroded banks. Sam Shepard, the contractor who rebuilt the pond, testified that he removed "probably four or five feet" of silt from the pond. Additionally, the parties stipulated that the damage to the pond was caused, in part, by the accumulated sediment. There was no evidence of any sudden, unexpected event causing the pond to become stagnant, but rather it appears that natural forces, including erosion, were the cause. We therefore cannot say that the Tax Court's denial of the Barmeses' casualty deduction was clearly erroneous.

The Tax Court's denial of the casualty deduction was also proper for an alternative reason. Pursuant to § 165(h)(1) and (2), casualty losses may only be deducted to the extent that they exceed $100 and are greater than 10% of adjusted gross income. In this case, the Barmeses' adjusted gross income for 1994 was $843,560 and the amount of the alleged casualty loss they incurred in restoring the pond was $27,817—only 3.3% of their adjusted gross income. The Barmeses, therefore, were not entitled to take a deduction for their loss in any event.

For the foregoing reasons, we AFFIRM the decision of the Tax Court.