In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1660

MICHAEL H. WU AND CHRISTINE T. WU,

*Plaintiffs-Appellants*,

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14-cv-3925 — **Sharon Johnson Coleman**, *Judge*.

SUBMITTED AUGUST 26, 2016[*] — DECIDED AUGUST 29, 2016

Before MANION, ROVNER, and HAMILTON, *Circuit Judges*.

PER CURIAM. Michael and Christine Wu contributed more
than allowed to their individual retirement accounts in 2007,
and as a result they faced taxes on those accounts for each
year that the excess funds remained. The Wus realized their

---

[*] After examining the briefs and the record, we have concluded that oral
argument is unnecessary. Thus the appeal is submitted on the briefs and the
record. *See* FED. R. APP. P. 34(a)(2)(C).

mistake in early 2010, informed the IRS, and corrected the problem by withdrawing the excesses from their accounts. The Wus paid the taxes for 2007 through 2009, and although they conceded liability for the first two years, they each sought a refund for tax year 2009 on the ground that they had avoided incurring taxes for that year by adjusting the IRA account balances before the April 2010 filing deadline for their 2009 tax return. The IRS rejected this contention, prompting the Wus to file this action under 28 U.S.C. § 1346(a)(1) for a refund of the 2009 taxes. The district court sided with the government, and the Wus appeal. We affirm the judgment.

Both of the Wus have an IRA, and each contributed $200,000 after selling their home in 2007. For that tax year the maximum allowable deduction for IRA contributions was $4,000, and "excess contributions" (as calculated at the end of a tax year) incur a tax of up to 6% annually until withdrawn. 26 U.S.C. §§ 219(b)(1), (b)(5)(A), 4973(a), (b) (2006); *see generally Johnson v. C.I.R.*, 620 F.2d 153, 155 (7th Cir. 1980) (discussing tax on excess IRA contributions); *Johnson v. C.I.R.*, 661 F.2d 53, 55 (5th Cir. 1981) (same); *Orzechowski v. C.I.R.*, 592 F.2d 677, 679 (2d Cir. 1979) (same). In March 2010, when the Wus finally realized their mistake, they withdrew from their IRAs the excess contributions and corresponding earnings. They jointly notified the IRS about the excess contributions and asked that the resulting taxes for 2007 through 2009 be waived. Oddly, the IRS gave different answers to the couple: Michael Wu received a letter concerning his "inquiry" saying that taxes had been assessed for each year; Christine Wu received a letter telling her that her "claim for credit" had been disallowed, that she too had

been assessed taxes on her excess contributions, and that she could appeal the decision disallowing her "claim."

Afterward the Wus promptly paid the taxes plus penalties. Then in February 2012 each filed with the IRS a claim for a refund of the taxes attributable to 2009 (additional claims made by the Wus are not relevant to this appeal). The Wus asserted that they had skirted liability for tax year 2009 by withdrawing (or, in IRS parlance, taking "distributions" of) the excess contributions and corresponding earnings before the filing deadline for their 2009 tax return. In April 2013 the IRS Appeals Office rejected this contention in a letter addressed to both Michael and Christine Wu. According to the Appeals Office, the filing deadline for a particular tax year is relevant only to events occurring during that tax year, e.g., no taxes would have been incurred for 2009 if the excess contributions had been made *in 2009* but distributed before the April 2010 deadline for 2009 individual returns. But since the Wus made their excess contributions in 2007, the Appeals Office continued, their distributions in 2010 did not save them from taxes for 2009.

Two months later, in June 2013, the Appeals Office sent a second letter, this one addressed only to Christine Wu. In this communication the Appeals Office purported to uphold the agency's previous rejection of her "claim for credit." Wu was told that she could sue for a refund in federal court so long as she did so within two years of July 19, 2010, the date of the letter denying her "claim for credit." That deadline, of course, had passed almost a year earlier.

The Wus jointly sued for refunds in May 2014. They asserted that their March 2010 distributions of the excess contributions and associated earnings brought into play

26 U.S.C. § 4973(b), which provides that IRA contributions made but then distributed under § 408(d)(4) "shall be treated as an amount not contributed." Section 408(d)(4) literally says that a "distribution of any contribution paid during a taxable year" will not count as gross income (under § 408(d)(1)) if that distribution "is received on or before the day prescribed by law (including extensions of time) for filing such individual's return for such taxable year." The Wus argued that this language means that excess contributions, for *whatever year* added to an IRA, are exempt from the annual tax on excess contributions in a later taxable year if a distribution is made during, or before a return is due for, that later taxable year. If their understanding of § 408(d)(4) is correct, then the Wus did not incur a liability for tax year 2009 because they distributed the excess contributions and earnings before April 15, 2010.

On the government's motion, the district court dismissed the action, agreeing with the government's position that Michael Wu did not state a claim and that subject-matter jurisdiction was lacking over Christine Wu's claim. The court accepted the government's view that § 408(d)(4) covers only those distributions made before the return deadline of the tax year when the excess contribution was made, not withdrawals of contributions made in earlier tax years. And because Michael Wu's excess contributions had been made in 2007, the court said, he missed the opportunity to avoid incurring taxes again in 2009 by not taking a distribution before the last day of the tax year. As for Christine Wu, the district court looked to the statute of limitations in 26 U.S.C. § 6532(a)(1) and, on that authority, concluded that it lacked "jurisdiction" because she had not filed suit within two years of receiving the IRS's July 2010 letter saying that her

"claim for credit" had been disallowed. And at all events, the court added, Christine Wu did not state a claim for the same reason that Michael Wu did not state a claim.

As the government has since conceded, it misled the district court about Christine Wu's claim. Section 6532(a)(1), although entitled "Periods of limitation on suits," has been interpreted as jurisdictional by several circuits. *See Kaffenberger v. United States*, 314 F.3d 944, 950–51 (8th Cir. 2003); *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 324 (6th Cir. 1990); *Dalton v. United States*, 800 F.2d 1316, 1319 (4th Cir. 1986). But whether or not that characterization is correct, § 6532(a)(1) is irrelevant to the letter received by Christine Wu in July 2010. That communication was prompted by the Wus' letter of March 2010, which sought "waiver" of a "penalty," not a "refund" of taxes which had not even been assessed. *See* 26 C.F.R. § 301.6402–2(b)(1) (defining content of claim for refund); *D'Amelio v. United States*, 679 F.2d 313, 315 (3d Cir. 1982) (observing that estate had not made a claim for a refund by sending to IRS letters that sought information about tax liability but "did not advise the government that it believed it was entitled to a refund"). And though it is possible to construe a communication from the IRS as waiving the formal requirements for a claim to a refund and disallowing a refund, *see Nick's Cigarette City, Inc. v. United States*, 531 F.3d 516, 521 (7th Cir. 2008), the March letter could not have triggered a decision by the IRS because no taxes had been paid or even assessed. So just like her husband, Christine Wu first claimed a refund of the 2009 taxes in February 2012 and then brought this action barely a year after the IRS Appeals Office finally disallowed that claim. Thus, for both Michael and Christine Wu, the ques-

tion before us is whether their interpretation of § 408(d)(4) is correct.

We conclude that it is not. Like the district court, we agree with the IRS's reading of § 408(d)(4). Although that interpretation appears to be no more than a litigation position that is not entitled to our deference, *see Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212–13 (1988); *In re UAL Corp. (Pilots' Pension Plan Termination)*, 468 F.3d 444, 449–50 (7th Cir. 2006); *Harco Holdings Inc. v. United States*, 977 F.2d 1027, 1035 (7th Cir. 1992), we are persuaded that the government's position is more consistent with the text of § 408(d)(4). That provision, as we have noted, literally applies when a contribution paid into an IRA "during a taxable year" is distributed "on or before the day prescribed by law (including extensions of time) for filing such individual's return for such taxable year." As the government points out, the phrase "such taxable year" refers to the taxable year in which the contribution was made to the account. The Wus made their excess contributions in 2007, so for *that* tax year they could have avoided incurring the annual tax on excess contributions by withdrawing the excess before the return-filing deadline for that taxable year, i.e., April 15, 2008. But for any later year the Wus could avoid the annual tax only by taking the distribution before the taxable year ended.

The position advocated by the Wus ignores the language in § 408(d)(4) and also is an ill fit with the text of § 4973(b). Under § 4973(b), the consequence of taking a qualifying distribution under § 408(d)(4) is that the amount of the withdrawal "shall be treated as an amount not contributed." But the Wus are not asking that their 2007 contributions be treated as if they were never contributed (after all, they conceded

liability for tax years 2007 and 2008); they are asking that those contributions be eliminated from the calculation for 2009 alone.

Although the Wus' principal contention is that the district court erred in dismissing their refund claims for 2009, we close by briefly addressing one other argument. They suggest in their brief that their calculated excess contributions should have been reduced by $475 each under § 4973(b)(2)(C). As the government points out, this contention is undeveloped, as the Wus have not pointed to any facts in support and did not raise it either in their refund claims before the IRS or in the various iterations of their complaint before the district court (apart from a mention of their total excess contributions being "$400,000 (or $399,050)"). The Wus' undeveloped argument is waived. *See United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016).

We have reviewed the Wus' remaining contentions, and none has merit.

AFFIRMED.